261 A.2d 1.

Frank L. Pucci *et al. v.* Angelo Algiere.

JANUARY 12, 1970.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The cause before us involves the provisions of chapter 353 of the Ordinances of the Town of Westerly, entitled "An Ordinance Relating to Minimum Standards for Non-residential Premises," as authorized by P. L. 1968, chap. 67, sec. 10, and consists of two separate appeals, one by Frank L. Pucci, the owner of the real estate which is the subject of this action, and the other by Angeline L. Garofolo, who is the holder of a note secured by a mortgage on said real estate. The defendant Angelo Algiere is the building official of the town of Westerly.

Mr. Pucci's appeal is from an order entered on October 16, 1968, directing him to demolish the building on his land and enjoining him from doing further work on the building. Mrs. Garofolo's appeal is from an order entered on December 9, 1968, denying her motion to dismiss the proceedings as to her. We shall hereinafter sometimes refer to Pucci as the plaintiff, to Mrs. Garofolo as the mortgagee, and to Algiere, the building official, as the defendant. For convenience we shall treat the appeals separately.

The plaintiff commenced this action on September 6, 1968, by filing a complaint seeking to enjoin defendant from demolishing the building on plaintiff's land pursuant to chap. 353. The complaint contains allegations that the plaintiff owns a parcel of land with a building of substantial value thereon at 71 Pierce Street; that on June 10, 1968, defendant sent a notice to plaintiff, a copy of which is

attached to the complaint, stating that an examination made of the building on May 29, 1968, and June 3, 1968, showed a non-compliance with the provisions of chap. 353, as detailed in the notice, that the building constituted a public nuisance, that defendant intended to remove or demolish the structure in accordance with the ordinance, that plaintiff was requested to appear at a hearing before defendant on June 18, 1968, and that copies of this notice were sent to the mortgagee and to Carmine L. and Alder Pendola, who had purchased this property from the mortgagee and had subsequently sold it to plaintiff; that, as a result of that hearing, defendant, on June 24, 1968, ordered plaintiff to remove or demolish the building, but gave plaintiff 60 days to repair or improve the building to meet all the standards set forth in chap. 353, copies of this order being sent to the mortgagee and to the prior owners of the property; that plaintiff appealed the order to the Board of Review as provided by sec. 5 of the ordinance; and that on July 15, 1968, the board affirmed the order.

The complaint further alleges that since June 10, 1968, plaintiff had been making repairs and improvements; that all repairs requested by defendant had been fully completed, and that in addition, substantial improvements had been made to the premises; that the building did not constitute a hazard to the health, safety or welfare of the occupants of any neighboring building or to the general public, nor did it constitute either a public or a private nuisance; that, on the contrary, the premises constituted a valuable property right to the plaintiff; and that on September 5, 1968, defendant notified plaintiff's counsel stating that, since plaintiff had failed to appeal the board's decision to the Supreme Court, defendant would, on September 7, 1968, order the demolition and removal of the building in accordance with the enabling act and ordinance. After receiving the above notice, plaintiff filed this com-

plaint seeking injunctive relief on the grounds set forth therein.

After the Superior Court denied defendant's motion to dismiss, defendant filed his answer and, in addition thereto, a counterclaim stating that plaintiff had not complied with his June 24, 1968 order and praying that (a) plaintiff be ordered to demolish the building forthwith or (b) that he be enjoined from interfering in any manner with defendant in the removal and demolition thereof and that plaintiff be ordered to pay any costs of the same.

The plaintiff filed a reply to the counterclaim and thereafter the matter was heard on the complaint and counterclaim before a justice of the Superior Court. The evidence before the trial justice consisted of certain exhibits, photos, the testimony of defendant and one other witness in support of the counterclaim, and the testimony of plaintiff and his witness in opposition to the counterclaim. The evidence relating to the work which had been done on the building by plaintiff, to the work which had remained to be done, and to whether the condition of the structure had been such as to violate the provisions of chap. 353, is conflicting. At the conclusion of the hearing the trial justice rendered a decision containing specific findings adverse to plaintiff. On October 14, 1968, on the basis of such findings, a judgment was entered directing plaintiff to demolish the building by November 16, 1968, and enjoining him from doing further work on the building. An order was entered on October 16, 1968, at the direction of the trial justice which incorporates his findings and orders. (See appendix I.)

## A

### Defendant's Motion to Dismiss

Initially we shall consider defendant's motion to dismiss the appeals by plaintiff and the mortgagee. The motion is on two grounds. The first is that the premises which

were the subject matter of this action were razed to the ground and the cause has therefore become moot. It appears from the record that defendant, pursuant to the orders entered in the Superior Court on October 16, 1968, and December 9, 1968, caused the building to be demolished after this court had denied motions by plaintiff and the mortgagee to stay execution of the Superior Court orders. The defendant argues that, since the subject matter of the action no longer exists, that which plaintiff and mortgagee sought to prevent has already occurred, and the case is therefore moot. He cites from 5 C.J.S. *Appeal and Error* §1362, and the following cases to support his position: *Cochrane* v. *Langlois,* 104 R. I. 522, 247 A.2d 91, *cert. denied,* 394 U. S. 920, 89 S. Ct. 1196, 22 L.Ed.2d 454; *Lauder* v. *Zoning Board of Review,* 100 R. I. 641, 218 A.2d 476; *Kimball* v. *Pelosi,* 96 R. I. 429, 192 A.2d 267; and *Johnson Wholesale Perfume Co.* v. *Blumen,* 63 R. I. 485, 9 A.2d 857. The cases cited by defendant are not in point and, therefore, we see no reason for discussing them. The destruction of the building by defendant did not moot all the issues raised by the appeals. Determination of important rights of the parties depends upon the correctness of the decision of the trial justice and the orders entered pursuant thereto. If we affirm those orders, plaintiff will be subject to the payment of costs and expenses of the demolition. If we reverse the decision and hold that the building was not a nuisance, or if we find that the alleged hazards and violations could have been abated without the necessity of destroying the whole building, then plaintiff may have a cause of action against defendant for damages resulting from the unlawful destruction of his property. See 5 C.J.S. *Appeal and Error* §1354(1), page 411 et seq., for a discussion of this problem. See generally *Lewis* v. *Town of North Kingstown,* 16 R. I. 15, 11 A. 173, and *Beacon Restaurant, Inc.* v. *Adamo,* 103 R. I. 698, 241 A.2d 291.

The second ground of defendant's motion is that the remedy of plaintiff and the mortgagee should have been by certiorari to this court pursuant to the provisions of P. L. 1968, chap. 67, sec. 8.[1] This ground is clearly without merit and requires little discussion. Section 8 is not applicable here. The plaintiff and the mortgagee are not appealing from an order of the building official or of the Board of Review. They are appealing from orders entered by the Superior Court on defendant's counterclaim wherein he sought an order requiring plaintiff to demolish the building forthwith or an order that plaintiff be enjoined from interfering with defendant in the demolition of the building and that plaintiff be ordered to pay the costs of the demolition. The Superior Court had jurisdiction to hear the counterclaim which was filed by defendant and from which appeals have been properly taken to this court by plaintiff and mortgagee. See *Palombo* v. *Housing Board of Review,* 92 R. I. 421, 169 A.2d 613.

The defendant has added another ground in his brief which was not included in his original motion to dismiss. He argues that plaintiff's appeal should be dismissed be-

---

[1]"Court review.—Any person, including the enforcing officer, aggrieved by any decision of the board, may present to the supreme court a petition duly verified setting forth that such decision is illegal in whole or in part and specifying the grounds of illegality. Such petition shall be presented to the court within thirty (30) days after the filing of the decision in the office of the board. Upon presentation of such petition, the court may allow a writ of certiorari directed to the board of review [;] such decision of the board shall prescribe therein the time within which a return thereto must be made, which shall be not less than ten (10) days and may be extended by the court. The allowance of the writ shall not stay proceedings upon the decision appealed from, but the court may on application, upon notice to the board and on due cause shown, grant a restraining order. The board shall not be required to return the original papers acted on by it, but it shall be sufficient to return certified or sworn copies thereof or such portions thereof as may be called for by such writ. The return shall concisely set forth other facts as may be pertinent and material to show the grounds of the decision appealed from and shall be verified."

cause of plaintiff's attitude and conduct. This argument begs the question, for we cannot know what plaintiff's conduct and attitude were until we pass on the merits of his appeal.

For the reasons stated, we deny defendant's motion to dismiss the appeals.

## B

### The Appeal of Frank L. Pucci

We address ourselves now to plaintiff's appeal, which he has briefed and argued under seven main points. We shall treat the appeal in like manner.

### 1

Under Point One of his brief plaintiff poses the following question:

> "Does the mere recital of and reference to administrative proceedings under chapter 353 in the counterclaim state a sufficient cause of action on which a court can order demolition of Pucci's building, and to declare the premises a common law nuisance?"

He indicates no ruling of the trial justice to which he made objection nor any portion of the transcript where this question was raised in the court below. Although we have doubts as to whether this question is properly before us for review, see *State* v. *Quattrocchi*, 103 R. I. 115, 235 A.2d 99; *Villa* v. *Hedge*, 96 R. I. 52, 188 A.2d 904; *Cottrell* v. *Lally*, 94 R. I. 485, 182 A.2d 302, we shall assume for the purposes of this case that it is.

As we understand him, plaintiff is contending in substance that defendant's counterclaim fails to state a claim upon which relief can be granted. He argues that the facts which have been incorporated by reference in the counterclaim relate back to a period from June 10, 1968, to July 15, 1968, and do not state that these facts existed at the time of the filing of the counterclaim on September 12, 1968; that nowhere in the counterclaim are there facts set forth showing

an actual existing hazard or immediate threat of harm or danger to occupants of neighboring buildings or to the general public, or showing that any harm was anticipated or was a reasonable consequence of the thing complained against, or that the injury would have been tangible and substantial; that neither are there allegations set forth that. the damage was irreparable and that demolition was the only remedy, and that the remedy for abatement of common law nuisances is controlled by G. L. 1956, §10-1-1.

In our judgment there is no merit to any of the arguments made by plaintiff in Point One of his brief. Rule 10(c) of the Rules of Civil Procedure of the Superior Court provides for adoption by reference:

> "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

Exhibits A and B attached to plaintiff's complaint and expressly incorporated by reference in defendant's counterclaim negate substantially all of the claims made by plaintiff in his present argument. The incorporation by reference of these exhibits repleads all allegations contained therein as of the time of the filing of the counterclaim, including allegations pertaining to the existing conditions of the property and that the same constituted a hazard to the health, safety, and welfare of the occupants of neighboring buildings and the general public and a public nuisance. The counterclaim also sets forth that defendant is the building official and that he acted pursuant to the provisions of chap. 353 of the ordinances. Section 7(2) of chap. 353 empowers the Court to grant the relief requested in the counterclaim and authorizes the relief sought by defendant building official.

From the above it is apparent that the counterclaim, by virtue of incorporation by reference, sets out conditions

which existed at the time of its filing, the capacity and authority under which defendant was operating, and the authority under which relief could be granted pursuant to the ordinance and the enabling act.

The answer to plaintiff's claim, that the Superior Court could not consider the matter before it as constituting a nuisance at common law because there had been no compliance with §10-1-1, is that the remedy set forth therein is neither exclusive nor mandatory. That section provides that "Whenever a nuisance is alleged to exist, the attorney-general or any citizen of the state may bring a bill in equity * * *." Moreover, since the Court had obtained jurisdiction of the subject matter under the enabling act, it could retain it for the purpose of administering full relief. See *Sparne* v. *Altshuler,* 80 R. I. 96, 105, 90 A.2d 919, 923, *reargument denied,* 80 R. I. 107, 91 A.2d 676, and *Bosworth* v. *Johnson,* 45 R. I. 86, 88-89, 119 A. 753, 754.

### 2

In Point Two of his brief plaintiff asks the following question:

> "Must the language of Chapter 353 and the Enabling Act be strictly construed as they are in derogation of common law?"

The plaintiff argues that sec. 2 of chap. 353 does not require the standards contained therein to be adhered to. (See appendix II.) He relies on the first sentence in sec. 2, which reads:

> "The owner of every non-residential building shall maintain any non-residential building or part thereof to comply with the following agreements * * *."

He contends that there is no evidence that plaintiff agreed to these standards and that, in the absence of any agreement, there can be no violation.

The general rule is that statutes in derogation of the common law must be strictly construed. However, that

rule is not applicable here because of the express language of the statute in question. P. L. 1968, chap. 67, sec. 12 provides:

> "This act shall be construed most favorable to the town of Westerly, its intention being to give same community the fullest and most complete powers possible concerning the subject matter hereof."

Moreover, there can be no doubt that in enacting this statute the legislature intended to give the town of Westerly all the power necessary to enable it to carry out the purpose of the act. (See appendix III.)

The plaintiff contends, however, that where the language of a statute is plain and unambiguous there is no occasion for construction, and that the statute must be given effect according to its plain and obvious meaning. Since here the ordinance uses the word "agreements," plaintiff argues that the word must be given its literal meaning. We agree with the statement of the rule, *Brown & Sharpe Mfg. Co. v. Dean,* 89 R. I. 108, 116-117, 151 A.2d 354, 358, but do not agree that it applies here. The meaning which plaintiff argues should be given to sec. 2 is neither a sensible nor a reasonable one in view of the plain purpose of the act and the clear legislative intent. Words used in a statute must be given a reasonable and sensible construction to carry out, if possible, the legislative purpose and intent. As the court said in *Cabral* v. *Hall,* 102 R. I. 320, at 323, 230 A.2d 250, at 252:

> "* * * a literal reading, though presumptively giving the correct sense of a statute * * * may and should be ignored if it does not convey a sensible meaning * * * or where it contradicts and defeats an evident legislative purpose * * *."

To adopt plaintiff's meaning would defeat the clear legislative intent.

The plaintiff's next argument under Point Two is that the substance of sec. 2 of the ordinance has very little

relation to the health, safety or welfare of the occupants of any neighboring building or the general public. Such an attack on the standards prescribed by the ordinance is so lacking in merit as to warrant no consideration.

## 3

The plaintiff next contends that, where a counterclaim is brought for alleged violation of the standards set forth in chap. 353, evidence of alleged violations of other codes of the town is inadmissible. Under Rule 46 of the Rules of Civil Procedure of the Superior Court plaintiff noted his objections to all lines of questioning with respect to violations of any ordinances of the town other than chap. 353. The plaintiff also objected to the admission in evidence of chap. 284, the Westerly Building Code, and a certain Stop Work Order, as well as evidence with respect thereto. The trial justice overruled his objections, noting that he did not think that the parties were limited only to chap. 353. The plaintiff claims that the trial justice considered these violations in his decision, even though their introduction was in error because they were not material to the issues of this case.

After reading the decision of the trial justice, we are satisfied that the evidence in question was material and germane to the issues before the trial justice. He stated during the course of the trial that it was necessary to consider plaintiff's attitude in deciding whether or not demolition of the building should be ordered in the event that the premises were found to be in violation of chap. 353. In the circumstances we find no error in his rulings allowing evidence of violations of other town ordinances.

## 4

Under Point Four plaintiff contends that the trial justice erred in ordering the demolition of plaintiff's property without giving him a reasonable opportunity to make repairs

if they were deemed necessary. He argues that, since this was an equitable proceeding, the trial justice should have taken into consideration the facts as they existed at the time of the hearing; that if a person had substantially corrected the faults which he was alleged to have committed, especially where there had been no harm or damage to anyone in the interim, there was no further cause of action, and that courts do not order destruction of property if it is practical otherwise to remove the nuisance.

With respect to the facts of the case at bar, he asserts that at no time during the trial was there any evidence that it was necessary to demolish this property in order to eliminate any potential hazard; that the undisputed facts show that plaintiff had done a considerable amount of work on the property; that he was proceeding to put up a new roof and continuing his work until the court enjoined him; and that a comparison of the facts set forth in defendant's June 10, 1968 notice to plaintiff and exhibit 15,[2] dated October 10, 1968, as well as the pictures, clearly show that improvements had been made.

The plaintiff points out that the trial justice stated in his decision that the facts set forth in the June 10, 1968, notice existed at that time, and that the facts set out in exhibit 15 existed on October 10, 1968, but that the trial justice gave plaintiff no credit for all his efforts. He also argues that the trial justice disregarded defendant's testimony that the then present condition of the interior of the building did not constitute any danger to the occupants of any neighboring buildings or to the public. Finally, he claims that it was obvious that all the items complained of could have been repaired without the necessity of destruction of

---

[2]Exhibit 15 is a memorandum made at the request of the trial justice by defendant in relation to his cross-examination. This exhibit is discussed under plaintiff's Point Seven.

this property and that it was error for the trial justice to disregard the undisputed facts.

We have given due consideration to all of the claims made by plaintiff under this point and agree with his statement of the applicable law. We do not, however, agree with his statement of the facts. To answer all of the arguments made by plaintiff would unduly prolong this opinion. As we view the record, the evidence with respect to some of the more important aspects of this case is directly conflicting. We are faced with a situation where plaintiff purchased this property with knowledge of its condition and the many orders against it by the local authorities. The trial justice, in considering what remedy should be applied if he found that the building constituted a nuisance, was warranted in considering the plaintiff's attitude and conduct in relation to his good faith in complying with the local ordinances and with the orders issued by the local authorities on the authority of such ordinances. The trial justice concluded that the repairs which plaintiff had been ordered to make were necessary and that plaintiff had been given a reasonable opportunity to make them. His findings are supported by the evidence and, therefore, will not be disturbed by this court unless they are shown to be clearly wrong or unless the trial justice, in making such findings, overlooked or misconceived any material evidence. *Mateer* v. *Mateer,* 105 R. I. 735, 254 A.2d 417. The burden is on plaintiff and in our judgment he has not sustained that burden. *Plantations Bank* v. *Desormier,* 102 R. I. 565, 568, 232 A.2d 371, 373.

5

Under Point Five plaintiff contends that the trial justice erred in deciding that the building on plaintiff's land was a hazard under the provisions of chap. 353 and a common-law nuisance. Some of the arguments made by plaintiff here are repetitive and have already been considered and

determined in our discussion of Point Four and, therefore, require no further discussion. We consider plaintiff's claim that defendant failed to sustain his burden of proving that the building involved was a hazard or danger to anyone under chap. 353 or that it was a common-law nuisance. In his decision the trial justice stated that he was proceeding both under the enabling act and the general equity powers of the court. He found that the building was at least 50 years old and extremely obsolete, but he noted that that alone would not determine that it was a nuisance. He then reviewed the background history of this property and plaintiff's relationship to it, including the prior violations of the building code by the previous owners and plaintiff's knowledge thereof. He found that whatever repairs or improvements had been made by plaintiff were not substantial, but had been made merely for the purpose of painting up or camouflaging the basic defects of the property. He did not believe plaintiff's testimony that he had spent $2,000 in repairing the property. He also found that the building had not been occupied for at least 10 years and noted that this indicated that it was not usable and that the long-standing non-use must have had an effect on the deterioration.

After pointing out some of the defects in the building, he said that, while it might be said that some of these defects affected the property itself, the fact was that, if this house collapsed or if there were a fire in the house, the whole neighborhood would have been affected. He found that there were no utilities in the building; that it was just a bare shell of a structure; and that the land without the building was worth more than with the building, because the building was a liability to the property in its then condition. He expressly found that the building was in violation of specific sections of sec. 2 of chap. 353. After reviewing the evidence, he concluded that the building

was a nuisance as the term is defined at common law and also under the ordinance definition. It was a nuisance, he said, because it was a hazard not only to the surrounding property, but also to the general public.

In deciding what to do about the structure, the trial justice found that nothing had been done that would make the building safe either for the property itself or for the surrounding area; that it was a target for vandalism; that so much had to be done to the building, and that the only thing that could be done would be to start all over by tearing it down because the day of patching up was gone. He also considered whether the demolition of the building would deprive plaintiff of a valuable piece of property. He found, as we have previously stated, that there was no value to the building; that, if anything, it had a minus value because it reduced the value of the land; and that, since he did not accept plaintiff's testimony as to the value of the improvements made by him, he found that plaintiff would not suffer any loss at all and, therefore, there was no taking without just compensation.

In our opinion defendant sustained his burden of proving that plaintiff's building was so lacking in the standards prescribed in chap. 353, sec. 2 as to be a hazard to the health, safety and welfare of the occupants of neighboring buildings and the general public, and, therefore, the trial justice was warranted in finding that the building constituted a public nuisance under the ordinance. By enacting P. L. 1968, chap. 67, the legislature has declared that the mere existence of certain conditions will create a nuisance subject to relief. As we have already said, the findings of the trial justice are supported by the evidence.

The evidence also supports the finding that the building constituted a common-law nuisance. See 66 C.J.S. *Nuisances* §1, and 39 Am. Jur. *Nuisances* §2. *Seidner, Inc.* v. *Ralston Purina Co.*, 67 R. I. 436, 24 A.2d 902, and *Com-*

*merce Oil Refining Corp.* v. *Miner,* 281 F.2d 465 (1st Cir. 1960), *cert. denied,* 364 U. S. 910, 81 S. Ct. 274, 5 L.Ed.2d 225, both cited by plaintiff, are factually distinguishable from the case at bar and are not in point. Those cases involved structures which were not yet in being, whereas here we are confronted with a building already in existence. The building in the instant case was described as unsafe and as just about holding itself up. The floors were described as being in danger of collapse; the condition of the foundation was questionable; and the roof was said to constitute a fire hazard. These defects, in addition to many others which are disclosed by the evidence, support a finding of the existence of a common-law nuisance.

The plaintiff has failed to persuade us that the findings of the trial justice are clearly wrong or that in making such findings he overlooked or misconceived any material fact. *Plantations Bank* v. *Desormier, supra.* Nor has plaintiff shown us wherein the trial justice misconceived the applicable law. In such circumstances we do not disturb his findings.

6

The plaintiff's next claim of error is the trial justice's refusal to permit him to argue at the end of all the testimony. The plaintiff points to several incidents during the trial when points of law were raised which he wished to argue. The trial justice asked him to proceed with the testimony, stating at the same time that there would be a chance to argue at the conclusion of the case. At the end of the testimony the trial justice refused plaintiff's request to argue some points of law, saying that he had listened to this case a good deal, had studied the law, and would rule on the case that day.

The plaintiff concedes that the right to argue in a nonjury case is discretionary with the Court. However, he argues that the trial justice's refusal in the circumstances

of this case amounted to an abuse of discretion, especially since he was not even given a chance to state what his argument would be. On this record we canont see how the denial of an opportunity to make a final argument prejudiced him in any way. The plaintiff made no offer as to that which he would have argued to the trial justice. That offer being absent there is nothing for this court to review, and we can only speculate that the denial, assuming it to be error, was prejudicial. See *Atlantic Refining Co.* v. *Director of Public Works,* 102 R. I. 696, 233 A.2d 423. Under our practice the conduct of a trial in the Superior Court is left to the sound discretion of the trial justice. The expeditious handling of a trial requires this. In the absence of a showing of prejudice, we cannot say that the questioned ruling in this case constituted an abuse of discretion.

## 7

The plaintiff, in Point Seven, poses the following question:

> "Is it error for the court to direct a witness, who kept no notes or records of his inspection, during cross-examination to prepare, with assistance of counsel, a written memorandum of what is allegedly wrong with the Pucci property, and then to admit such document (Exhibit 15) into evidence?"

It appears that while defendant was under cross-examination, the trial justice suggested that defendant prepare, overnight, for the next session of court, a list of items which were then in violation of chap. 353. It appears from the transcript that plaintiff agreed to this procedure. The defendant prepared the memorandum with the help of his counsel. The defendant dictated to his counsel who, in turn, dictated to his secretary for typing.

The memorandum was subsequently introduced in evidence over plaintiff's objection as defendant's exhibit 15, and his motion to strike was denied. Exhibit 15 itemizes

the various violations of chap. 353 which defendant testified then existed. The plaintiff argues that the trial justice clearly abused his discretion in allowing the admission of this memorandum during cross-examination and in permitting defendant to use it to refresh his recollection, especially because it was prepared with counsel's help and because the trial justice gave much weight to and relied on all the facts set forth in the memorandum and cited it in support of his findings.

A reading of the pertinent portions of the transcript satisfies us that the trial justice did not abuse his discretion in admitting exhibit 15 or in allowing defendant to refer to it while he testified. It is obvious that the trial justice was convinced that the statements in the memorandum were defendant's and that they were true. His reason for requesting the preparation of the statement was to aid the court in understanding his testimony about the condition of the building at that time. This was information which he needed to determine the remedy, if a nuisance were found to exist.

C

The Appeal of Mrs. Angeline L. Garofolo

This is the mortgagee's appeal from an order entered in the Superior Court on December 9, 1968, holding that Mrs. Garofolo was not a bona fide mortgagee of, and had no interest in, the property which is the subject of this action.

After plaintiff had filed his notice of appeal to this court, he filed a motion in the Superior Court requesting a stay of the execution of the trial justice's order pending decision of the appeal by this court. On November 12, 1968, the trial justice caused an order to be entered denying the motion to stay as to the plaintiff. However, he granted the motion as to Angeline L. Garofolo, the mortgagee, and Carmine L. and Alder Pendola, the prior owners, up to December 15, 1968, to the extent that defendant was en-

joined from demolishing the building. The order also direc-
ted defendant to prepare and file a show cause order to
be heard on December 2, 1968, directed to the mortgagee
and the prior owners requiring each to show cause why
the October 16, 1968 order should not be 'put into effect
within 20 days of receipt of the show cause order. The show
cause order was entered on the same day, and it appears
from the record that the mortgagee and the prior owners
were given notice thereof.

On November 27, 1968, the mortgagee filed a motion to
vacate the show cause order and to dismiss the proceedings
against her for the reasons stated in her motion. This
motion was filed under Rule 7(b) of the Rules of Civil
Procedure of the Superior Court. A hearing thereon was
held before the trial justice. After hearing the evidence
presented by the mortgagee and defendant, the Pendolas
not appearing, the trial justice rendered a decision holding
that the order entered on November 12, 1968, should stand
and that the building was to be demolished not later than
December 15, 1968. In his decision, he made specific find-
ings of fact relative to the interests of the mortgagee and
the Pendolas. He also noted that he had ordered this hear-
ing because mention had been made of former owners and
the mortgagee of record, and he wanted to be sure that all
parties who might have any possible interest in the prop-
erty were accorded their full rights. With respect to the
Pendolas, he found that no rights of theirs were involved.
With regard to the mortgagee, he noted that a contention
had been made that she had not been noitfied and that
she should have been made a party. He found that she at
all times had had knowledge of what was going on and
she had chosen not to participate in the proceedings; that
she was not a bona fide mortgagee; that she had known
of the various orders issued by the town; that she had
abandoned all interest in the property; that she had no

present interest in the property; and that consequently no interest of hers was being taken away or jeopardized. He also stated that he was convinced that, at best, some of the names that appeared on record were merely straw names, and that he had not been told who the real parties in interest were; that it was apparent to him that she had come reluctantly because she had no interest to protect; that she had given many evasive answers such as she did not remember, she did not know, she left everything to her husband; and that it was significant to him that her husband had not been put on the stand. In the circumstances, he concluded that it was not necessary that she be a party to these proceedings.

In the alternative, the trial justice found that, even if Mrs. Garofolo was a bona fide mortgagee and the note was a valid note, it had little or no value for the following reasons: she had released the makers; the mortgage was on property which was subject to so many liens that, in the open market, the note had no value excepting nominal value; even if she did own the note, she was not going to lose by the demolition of the building; the land was worth more without the building than with it; the building was a liability; and at most the property was worth $1,000 or a sum in that neighborhood. In arriving at the value of the property he relied on the testimony of real estate experts who had testified that the building either had no value or that it had a minus value.

On the basis of his findings two orders were entered, one on December 5, 1968, relating to the Pendolas and the other on December 9, 1968, relating to the mortgagee, both stating, in effect, that the order entered on October 16, 1968, should stand and that the building was to be demolished not later than December 15, 1968. The mortgagee appealed to this court from the order entered on December 9, 1968.

The plaintiff and the mortgagee filed motions in this court to stay execution of the judgment entered in the Superior Court. On January 9, 1969, an order was entered here denying those motions and vacating a temporary stay which we had theretofore granted.

The mortgagee's first contention is that she cannot be made a party to this proceeding after the judgment was entered in plaintiff Pucci's case. It appears from the record that numerous administrative hearings were held prior to the instant action; that the mortgagee was at all times represented by the same attorney who represents Pucci in this proceeding and had received notice of every administrative hearing; that she had knowledge of the decisions in all of those hearings; that she was represented by the same attorney when plaintiff commenced this action; and that her attorney told the mortgagee he was filing a petition on behalf of Pucci. It also appears that the trial justice, at her counsel's request, permitted the mortgagee at the show cause hearing to retry the case and permitted testimony with respect to the value of the building and with respect to the question whether the building was in such condition that it should be demolished. In these circumstances we agree with defendant's contention that, by proceeding to fully litigate the entire issue of the original proceeding, the mortgagee has waived any objection to not being made a party to the original proceeding. Her rights were fully protected at the show cause hearing. She was permitted to present real estate experts and other witnesses in an attempt to prove that the building had value, that it was not in violation of the ordinance, and that it was not a public nuisance.

The mortgagee's next contention is that, as holder of a mortgage of record, she was a party in interest. We note here that the uncontradicted evidence shows that no one was liable on the note. The mortgagee had released the

makers of the note and Pucci had never assumed the payment thereof. The mortgagee's testimony as to the amount of money due her on the mortgage is rather confusing. Nevertheless, the trial justice was warranted in interpreting her testimony to be that she had nothing coming and expected nothing, except that they might give her something. It is clear that the trial justice was not impressed with her testimony nor with the failure of her husband to take the stand. The trial justice found that she was not a bona fide mortgagee and that she was not a party in interest because she had no valid interest in the property. On this record we cannot say that his findings were clearly wrong or that, in making them, he overlooked or misconceived any material evidence. *Plantations Bank* v. *Desormier,* 102 R. I. 565, 232 A.2d 371.

The mortgagee's final argument is that the property was not in violation of chap. 353, sec. 2 of the ordinance. The trial justice's findings to the contrary are supported by the evidence and will not be disturbed by this court unless they are clearly wrong or unless the trial justice misconceived or overlooked any material evidence. The mortgagee, as appellant, had the burden of establishing this; she has failed to sustain that burden and, therefore, his findings must stand. *Plantations Bank, supra.*

The appeals of Frank L. Pucci and Angeline L. Garofolo are denied and dismissed; the orders appealed from are affirmed, and the case is remitted to the Superior Court for further proceedings.

## APPENDIX

I. Order of Trial Justice dated October 16, 1968.

"1) The Court finds as a fact that the present building of the plaintiff, Frank L. Pucci, is in violation of Section 2.A., 2.B.1., 2.B.2., and 2.B.3., of the Town of Westerly Ordinance No. 353 entitled 'Minimum Standards for Non-Residential Buildings' and further is a

nuisance as defined by said Ordinance and is a nuisance at common law.

"2) The Court further finds that said structure or building of the plaintiff is a hazard to surrounding property and to the general public.

"3) The Court further finds that there are many violations including but not limited to, and found to be as a fact conditions of outside stairways and appurtenances being unsafe; windows and doors not tight enough to prevent entry to passerbys; foundations unsafe; grading and drainage are inadequate.

"4) The Court further finds that all work done by the owner, Frank L. Pucci, up and including October 14, 1968, was improper and plaintiff did the same at his own risk; that the work done by the plaintiff was a camouflage and a cover-up and was done merely to sell the property.

"5) The Court finds that there is no taking of property without just compensation in this case.

"6) The Court further finds that the structure of the plaintiff is not safe to itself nor to neighboring and adjoining property and is an open target for vandalism and an attractive nuisance and a fire hazard.

"7) The owner, Frank L. Pucci, is hereby ordered to demolish said building on or before November 15, 1968. If said building is not demolished on or before November 15, 1968, the Building Official of the Town of Westerly may demolish the same and charge the plaintiff owner for expenses of the same and the same shall become a lien upon the real estate of the plaintiff.

"8) The Building Inspector is hereby enjoined from demolishing the said structure prior to November 15, 1968.

"9) The plaintiff, Frank L. Pucci, is restrained and enjoined from doing any further work whatsoever on said structure.

"10) The plaintiff, Frank L. Pucci, is hereby ordered to take immediate and necessary steps to prevent vandalism.

"11) The Building Inspector shall have reasonable inspection privileges."

II. Town of Westerly, Chapter 353, An Ordinance Relating to Minimum Standards for Non-residential Premises, Section 2. Standards, reads as follows:

"The owner of every non-residential building shall maintain any non-residential building or part thereof to comply with the following agreements:

"a) Grading and Drainage.

"The grading and drainage of any non-residential building shall be such that no water shall be allowed to seep into any basement or cellar, or to accumulate or become stagnant therein or on the premises, and no roof or surface drainage shall create a structural, safety, or health hazard by reason of construction, maintenance, or manner of discharge.

"b) Structural Elements.

"1. Every foundation shall adequately support the non-residential building at all points, shall be free of holes, wide cracks and buckling. Every floor, exterior wall and roof shall be free of holes, wide cracks, and loose, warped, protruding or rotting boards or any other condition which might admit moisture, or rodents, or which might constitute a hazard to health or safety. All exposed surfaces which have been adversely affected by exposure or other causes shall be repaired and coated, treated or sealed so as to protect them from serious deterioration. Every interior wall and ceiling shall be free of large holes and large cracks, loose plaster or other material, defective materials, or serious damage.

"2. Every window, exterior and bulkhead shall be weathertight, watertight, rodent proof, and not accessible to entrance by trespassers.

"3. Every outside stairway, porch and every appurtenance thereto shall be constructed and maintained in safe condition and good repair.

"4. Every plumbing fixture and water pipe and waste pipe shall be properly installed and be free from defects and leaks; and every electrical fixture, wire and

connection shall be properly installed and be free from any defect.

"5. Every non-residential building shall be free from infestation.

"6. All premises shall be free from any garbage, rubbish and combustible material of every nature and description.

"Whenever any non-residential building is so lacking in the aforementioned standards so as to be a hazard to the health, safety or welfare of the occupants of any neighboring buildings or the general public, the same shall be a public nuisance."

III. Public Laws 1968, chap. 67, sec. 2 reads as follows:

"Legislative findings. — The general assembly finds and declares (a) that there exists in the town of Westerly numerous non-residential premises which are substandard due to dilapidation, deterioration, disrepair, structural defects, uncleanliness, lack of adequate ventilation, light, sanitary or heating facilities and occupancy of unfit premises and other conditions and defects which increase the hazards of fire, accidents and other calamities; (b) that these conditions, singly or in combination, endanger the health, safety, morals and general welfare of the people of the town of Westerly and give impetus to the development, continuation, extension and aggravation of blighted and substandard conditions and are thereby declared to be a public nuisance; and (c) that the establishment of minimum standards for non-residential premises by the town of Westerly is essential to the protection of the public health, safety, morals and general welfare."

*Harold B. Soloveitzik, Matthew L. Lewiss, George Ajootian,* (for Angelina L. Garofolo, mortgagee), for plaintiffs.

*Joseph J. Parrilla,* Town Solicitor, for defendant.