**Dorothy PADULA et al.**

v.

**Laura MACHADO, Executrix.**

**No. 77–393–Appeal.**

Supreme Court of Rhode Island.

July 16, 1980.

Robert L. Kiernan, Kirshenbaum & Kirshenbaum, Providence, for plaintiffs.

Thomas Santamaria, Providence, for defendant.

## OPINION

DORIS, Justice.

This is an appeal by the appellant Laura Machado from a judgment of the Superior Court holding that a will and a deed for property, both executed by Rose Correia on September 4, 1974, were procured through undue influence.

The facts in this case are extremely complex because Mrs. Correia executed four purported wills and the witnesses at trial provided varying versions of the motivations and circumstances surrounding each execution. We will try to unravel the evolution of these four wills as directly and concisely as possible.

Rose and Joseph Correia married and had four children—Mary Brodeur, William Correia, Laura Machado, and Dorothy Padula. One of these children, Laura Machado, lived with her parents and because of her mother's limited ability to speak and read English, handled most of her mother's telephone calls and correspondence.

In 1971, Rose and Joseph Correia executed their first set of wills which had been drafted by Attorney Robert Afflick. These were reciprocal wills under which Dorothy Padula was named executrix and sole legatee of her parents' estate.

Upon learning of these wills, Laura Machado questioned her parents about why she had been excluded as a beneficiary. According to Mrs. Machado's testimony, her father was "upset" that she had been left out and told her to take the wills to Attorneys Kirshenbaum and Kirshenbaum to be amended to include her as a legatee. She followed these instructions, and a second set of wills was drafted and executed by Rose and Joseph Correia. These were also recip-rocal wills, but this time Attorneys Kirshenbaum and Kirshenbaum were named executors and the parents' estate passed to all four of the Correia children equally and per stirpes to their issue.

Following the execution of these wills, Mr. and Mrs. Padula testified that Mrs. Machado convinced Mrs. Correia that executors not in the family could diminish an estate by the assessment of exorbitant fees and charges. Thus, a third set of wills was drafted this time by Attorney Cameron Quinn. These reciprocal wills, leaving their estate to their four children equally, were executed by Rose and Joseph Correia on June 27, 1973. The wills contained no per stirpes provision and Mrs. Machado (then Mrs. Pimental) was named executrix.

On December 29, 1973, Mr. Correia died, and his will was probated with his estate passing to Mrs. Correia.

On February 2, 1974, Mrs. Machado entered into a third marriage, this time to Donald Machado, a New Bedford, Masachusetts resident, eleven years her junior.

In the early part of 1974, a family meeting was held to discuss Mrs. Correia's third will. At this meeting Dorothy Padula's husband explained the terms of this third will and emphasized that Mrs. Correia's estate would pass only to Mrs. Correia's children and neither to her grandchildren nor to her children's husbands. Mrs. Padula testified that when Mr. and Mrs. Machado heard this, they became very upset and that Mr. Machado immediately contacted his attorney, Roy Santos in New Bedford, Massachusetts, to corroborate that he was not a beneficiary under this will. Mr. Padula indicated that when Attorney Santos confirmed Mr. Machado's failure to take under the will, Mr. Machado reassured his wife that he would have his "good friend," Roy Santos, draft a new will under which Mr. Machado would be a legatee.

Following this family meeting, Mrs. Correia and her family went to visit Attorney Cameron Quinn allegedly with the purpose of seeing whether, now that her husband was deceased, her will needed to be amend-

ed. Attorney Quinn testified that it was a "volatile" meeting and that Mrs. Machado urged that spouses of Mrs. Correia's children be made legatees. Attorney Quinn testified that the meeting concluded with Mrs. Correia stating that she was satisfied with the disposition of her property as specified in the will drawn by Attorney Quinn.

In contrast to Attorney Quinn's testimony, Mrs. Machado indicated that her mother was not satisfied with her will as drafted by Attorney Quinn. Mrs. Machado stressed that her mother was concerned that she was still being referred to as Mrs. Pimental, her previous married name, in the will drafted by Attorney Quinn. Mrs. Machado indicated that, therefore, she made an appointment for her mother with her husband's attorney, Roy Santos, in New Bedford, Massachusetts. Mrs. Machado explained that she did not make the appointment with Attorney Quinn because she believed her mother should have the opportunity to meet with an attorney, such as Roy Santos, who spoke Portuguese, her mother's language.

As a result of Mrs. Correia's meeting with Attorney Santos a great deal more of the will than Mrs. Machado's name was changed. Indeed, a fourth will was drafted which left Mrs. Correia's estate to Mrs. Machado and in the event that Mrs. Machado did not survive her mother, then to Mrs. Machado's husband. Mrs. Correia executed this will on September 4, 1974. At the same time she executed a deed for her house on 81 Providence Street in West Warwick to Mrs. Machado.

Mrs. Padula testified that, upon learning of the execution of this latest will and the deed, she confronted her mother as to why she and the other children had been excluded as beneficiaries. Mrs. Padula emphasized that her mother responded that she wanted all of her children to take equally under the will and ordered Mrs. Machado to correct the will and void the deed to reflect these wishes. William Correia, Mary Brodeur, Ralph Padula, and Mary Belleville, all testified that they heard Mrs. Correia assert

on several occasions that she wanted her children to share her estate equally. Mrs. Padula further testified that she asked her mother repeatedly if the will and conveyance had been corrected and that each time her mother indicated that Mrs. Machado had reassured her that she had taken care of the matter.

Mrs. Correia died on April 9, 1976. Her September 4, 1974 will was admitted to probate on October 20, 1976. Mrs. Padula contested both the September 4, 1974 will and the deed on the grounds that they were procured through the undue influence of Mrs. Machado. Mrs. Padula appealed to the Superior Court where, at the end of a lengthy jury-waived trial, the trial justice concluded that Mrs. Machado had exercised undue influence on her mother in the execution of these legal instruments.

On appeal from this judgment, Mrs. Machado raises five issues. First, she contends that the decision of the trial justice was contrary to the "evidence and the weight thereof." All of the remaining issues she raises deal with rulings made by the trial justice during the course of the trial. Specifically, Mrs. Machado claims that the trial justice erred as follows:

1. in allowing witnesses to testify who were not listed in the interrogatories,

2. in not allowing Mrs. Machado's witness, Mrs. Furtado, to testify as to whom Mrs. Correia had indicated she was leaving her property,

3. in not allowing redirect examination of Mrs. Machado following an extensive cross-examination, and

4. in refusing to allow Mrs. Machado's witness, Mrs. Furtado, to testify about threats made to her husband if she testified against Mrs. Padula.

We do not agree with any of these contentions. With respect to Mrs. Machado's first contention, it is well settled that the findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed by this court on appeal

unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. *De Bartolo v. Di Battista*, 117 R.I. 349, 353, 367 A.2d 701, 703 (1976); *Raheb v. Lemenski*, 115 R.I. 576, 350 A.2d 397 (1976).

██ Our review of the record does not reveal that the trial justice was clearly wrong or that he misconceived or overlooked material evidence in finding that Mrs. Machado had exercised undue influence on her mother in the execution of the September 4, 1974 will and deed.

██ It is clear that the exercise of undue influence may be proven by circumstantial evidence. *Apollonio v. Kenyon*, 101 R.I. 578, 225 A.2d 778 (1967). In the present case we agree with the trial justice that when all the facts and inferences presented at trial are considered in combination, it is reasonable to conclude that Mrs. Machado imposed her desires on her mother as to how her mother should dispose of her estate.

Mrs. Machado clearly had the opportunity to substitute her "will" for that of her mother by virtue of the fact that she lived with her mother and, because of her mother's limited ability to speak and understand English, handled most of her mother's business affairs.

Further, the testimony at trial reveals a vigorous proclivity on the part of Mrs. Machado to influence her mother in respect to the disposition of her property. As previously detailed, Mrs. Machado played an integral role in inducing her mother to amend the wills drafted by Attorneys Afflick, Kirshenbaum, and Quinn. These amendments, not surprisingly, progressively granted Mrs. Machado increased control over, and a larger portion of, her mother's estate. Indeed, Mrs. Machado made an appointment for her mother to discuss her third will with the attorney of Mrs. Machado's own husband, even though Attorney Santos was inconveniently located in another state. As a result of this appointment, Mrs. Correia executed a will naming Mrs. Machado, and in the event she did not survive her mother, then Mrs. Machado's husband, as sole legatee.

We agree with the trial justice that it was "unusual" for Mrs. Correia to leave her property to Mrs. Machado's husband in the event Mrs. Machado predeceased her. Mrs. Correia had only been Mr. Machado's mother-in-law for eight months before she executed the will including him as a legatee and according to several witnesses, Mrs. Correia had no reason to exclude her other children, whom she loved, as beneficiaries.

We further agree with the trial justice's conclusion that the evidence adduced at trial substantiates Mrs. Correia's satisfaction with the will drafted by Attorney Quinn distributing her estate to all her children equally.

Finally, we also concur with the trial justice's judgment that if the Machados were not hesitant to exert influence on Mrs. Correia at the family meeting in Attorney Quinn's office, then it is unlikely they would refrain from influencing her when not in the presence of others.

We do not find that the trial justice was clearly wrong or misconceived or overlooked material evidence in concluding that Mrs. Machado exercised undue influence on her mother in regard to the September 4, 1974 will and deed.

██ The remainder of the issues Mrs. Machado raises on appeal are easily resolved. First, we note that "[u]nder our practice the conduct of a trial in the Superior Court is left to the sound discretion of the trial justice." *Pucci v. Algiere*, 106 R.I. 411, 428, 261 A.2d 1, 11 (1970). As our review of the record shows that the trial justice did not abuse his discretion in permitting witnesses not listed in the interrogatories to testify and in not allowing one of Mrs. Machado's witnesses to testify as to whom Mrs. Correia indicated she was going to dispose of her property, we conclude that these rulings do not constitute reversible error.

■ Finally, with respect to the remaining two rulings being appealed, that is, not allowing redirect examination of Mrs. Machado and in refusing to permit one of Mrs. Machado's witnesses to testify concerning a threat made by one of Mrs. Padula's witnesses—since these rulings were not objected to at trial, they are not now properly before this court for consideration. *State v. Cline*, R.I., 405 A.2d 1192, 1209 (1979).

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings in accord with this opinion.