STATE

v.

**Frederick J. McKENNA.**

No. 85–302–C.A.

Supreme Court of Rhode Island.

June 30, 1986.

Arlene Violet, Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Paula Rosin, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant was indicted by a Newport County Grand Jury in May of 1984. The indictment charged the defendant with a single count of first-degree sexual assault occurring between the dates of July 1, 1983, and August 1, 1983, in violation of G.L. 1956 (1981 Reenactment) § 11–37–2, as amended by P.L. 1981, ch. 119, § 1 and § 11–37–3.[1] The case was tried before a justice of the Superior Court sitting with a jury that returned a verdict of guilty against the defendant. His motion for a new trial was denied, and he is now before us on appeal.

At trial, complainant testified that on two separate occasions sexual activity between her and defendant had allegedly oc-

---

1. General Laws 1956 (1981 Reenactment) § 11–37–2, as amended by P.L. 1981, ch. 119, § 1 provides:

"A person is guilty of first degree sexual assault if he or she engages in sexual penetration with another person, not the spouse of the accused, and if any of the following circumstances exist:

(A) The victim is thirteen (13) years of age or under.

(B) The accused knows or has reason to know that the victim is mentally incapacitated, mentally defective, or physically helpless.

(C) The accused uses force or coercion.

(D) The accused, through concealment or by the element of surprise, is able to overcome the victim.

(E) The accused engages in the medical treatment or examination of the victim for the purpose of sexual arousal, gratification or stimulation."

Section 11–37–3 provides:

"Penalty for first degree sexual assault.— Every person who shall commit sexual assault in the first degree shall be imprisoned for a period not less than ten (10) years and may be imprisoned for life."

curred.[2] The defendant took the stand and categorically denied ever having engaged in any sexual activity with complainant. The complainant's mother and former girl friend of defendant, also testified at trial. She stated that in July 1983 complainant informed her of the sexual activity that had allegedly occurred. She also testified that when confronted with the accusation, defendant denied ever having assaulted the child. Despite the denial, the mother stated, she insisted that defendant move out of the home in August 1983.

On appeal defendant assigns as error the following issues:

1. Whether it was proper for the trial justice to inform the jury during his charge that the state did not have to prove that the alleged sexual assault took place within the dates stated in the indictment and that the jury need only find that the alleged act occurred on some day.

2. Whether defendant's right to be free from double jeopardy was infringed upon by the fact that no time or date was ever established for the assaults.

3. Whether the trial justice failed to maintain the appearance of impartiality by interjecting questions that elicited answers favorable to the prosecution.

### I

In addressing the first issue, defendant contends that the trial justice erred in instructing the jury relative to the date of the alleged offense. Defense counsel proposed that the jury be instructed that the state has the burden of proving that the offense occurred within the one-month period specified in the in-dictment. In other words, defense counsel requested that the trial justice inform the jury that the dates stated in the indictment constituted an element of the offense that the state was required to prove beyond a reasonable doubt.

The trial justice rejected the instruction proffered by defendant and instructed the jury as follows:

"Now, ladies and gentlemen, the elements that the State must prove beyond a reasonable doubt are as follows: Number one, that a person engages in sexual penetration; number two, with another, not the spouse of that person; number three, that the victim is under thirteen years of age. The Court will indicate to you that the dates that are included, and the specific dates, are not necessary; that they need not be proved beyond a reasonable doubt, if you are convinced that the act did occur on some particular day."

We had occasion to consider this issue in *State v. Correia*, 106 R.I. 655, 262 A.2d 619 (1970). There the indictment charged the defendant with having committed the offense in question on December 3, 1966. In jury instructions that were deemed proper by this court, the trial justice stated that "the indictment says that it happened on December 3, 1966. Now is that date so significant that if the proof shows that it may have happened on some other day, that the state's case fails? My answer to you is 'no.'" *Id.* at 660–61, 262 A.2d at 622. Moreover, in *State v. Espinosa*, 109 R.I. 221, 283 A.2d 465 (1971), we noted that the state need not prove that the crime occurred on the exact date charged unless a statute of limitations is involved.[3] And in

---

**2.** Prior to trial, the trial justice conducted a pretrial voir dire to determine whether the child was competent to testify. *State v. Pettis*, 488 A.2d 704 (R.I.1985); *In re Gerald*, 471 A.2d 219 (R.I.1984). The child stated that she knew the difference between the truth and a lie, and that she would expect punishment if she failed to tell the truth. She also stated that she knew that by taking an oath or promising to tell the truth, she could not lie. Relying upon the hearing, the trial justice determined that the child was competent to testify.

**3.** The Legislature has also addressed this issue. General Laws 1956 (1981 Reenactment) § 12–12–10 provides:

"Variances of proof and immaterial mistakes. —A defendant shall not be acquitted or discharged on the ground of variance between the allegation and proof if the essential ele-

the case of *State v. McParlin*, 422 A.2d 742, 744 (R.I.1980), we concluded that as long as the essential elements are stated in the indictment, G.L. 1956 (1981 Reenactment) § 12–12–10 permits discharge of a defendant only where the variance is prejudicial to his defense.

■ Here, defendant clearly was not prejudiced by the judge's instruction that the prosecution did not have to prove when the alleged act occurred, but only that "the act did occur on some particular day." Were defendant to have produced alibi witnesses or testimony consistent therewith, then the lack of a specific date may have prejudiced his defense. However, defendant has categorically denied that sexual acts with the victim occurred at any time, and as such any variance between the indictment and the proof would be immaterial.

## II

Although the victim stated that the alleged sexual assaults occurred on more than one occasion, defendant was only charged with one count of first-degree sexual assault which allegedly transpired between July 1, 1983, and August 1, 1983. The defendant therefore contends that if a second prosecution were to be commenced in the future to address the other incidents, he would be unable to exercise his constitutional right to be free from being placed in jeopardy a second time for what could very well be the incident for which the jury convicted him.

■ Although defendant's argument would warrant careful scrutiny by this court if a second prosecution were pending, the fact remains that there is no second prosecution pending at this time. At best, McKenna's argument raises a "moot, abstract, academic or hypothetical question"

that this court need not consider at this time. *Morris v. D'Amario*, 416 A.2d 137, 139 (R.I.1980). Our reasoning on this issue parallels the rule enunciated by the United States Supreme Court in *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 284, 89 S.Ct. 518, 527, 21 L.Ed.2d 474, 485 (1969), wherein the Court noted that it does not sit " 'to decide abstract, hypothetical or contingent questions * * * or to decide any constitutional question in advance of the necessity for its decision * * *.' " Unless or until a second prosecution is commenced, defendant's double-jeopardy challenge is speculative and not ripe for consideration by this court.

## III

The defendant next argues that the trial justice impermissibly interjected himself during the examination of witnesses by questioning the child and eliciting answers that were beneficial to the state. The result of this questioning, defendant contends, was the abrogation by the trial justice of his duty to maintain an air of impartiality during the proceedings. Conversely, the state contends that the trial justice's questioning of the minor witness did not transgress the bounds of judicial propriety as set out by this court on numerous occasions.

It is settled law in this jurisdiction that the conduct of a trial is within the sound discretion of the trial justice. *Padula v. Machado*, 416 A.2d 1184 (R.I.1980); *Pucci v. Algiere*, 106 R.I. 411, 261 A.2d 1 (1970). It is the responsibility of the trial justice to ensure that as the parties present their respective cases, the truth is properly ascertained. *State v. Santos*, 413 A.2d 58 (R.I.1980). Absent a clear abuse of discretion, the conduct of the trial justice will not be interfered with on review. *State v. Giordano*, 440 A.2d 742 (R.I.1982).

---

ments of the crime are correctly stated in the indictment, information or complaint unless he is thereby prejudiced in his defense. He shall not be acquitted or discharged by reason of an immaterial misnomer of a third party, by reason of an immaterial mistake in the description of the property or the ownership thereof, by reason of failure to prove unnecessary allegations in the description of the crime, or by reason of any other immaterial mistake in the indictment, information or complaint."

We first addressed the issue of witness examination by the trial justice in front of the jury many years ago in the case of *State v. Amaral,* 47 R.I. 245, 132 A. 547 (1926). There, the court stated:

"In the furtherance of justice it is sometimes proper and commendable for a judge presiding in a jury trial to interrogate a witness as to relevant matters proper to be presented to the jury. He should do this, however, with caution. In such examination he should guard against even the appearance of changing his position from that of a judicial officer impartially presiding at the trial to that of a partisan advocate interested in establishing the position of either party." *Id.* at 249–50, 132 A. at 549–50.

In two recent cases this court was again confronted with the delicate issue of judicial interrogation. In *State v. Giordano,* this court, while affirming the lower court, again reiterated its concern for judicial impartiality when a trial justice deems it necessary to question a witness. 440 A.2d at 745. And in *State v. Dionne,* 442 A.2d 876, 885 (R.I.1982), this court once again sanctioned the use of judicial interrogation of witnesses in front of a jury when the trial judge acted evenhandedly and impartially during the course of the trial.

■ In the instant appeal, defendant took exception to the judge's questioning of the minor victim at the following occasions:

1. "The Court: What did you tell her (the child's mother)?
   The Witness: I told her what he did to me.
   The Court: And what did you tell her?
   Defense: Objection, your honor.
   The Witness: That he—that he made me pull down my pants. He made me suck on the dingdong."

2. "The Court: How many times did this happen?
   Defense: Objection, your honor.
   The Court: Overruled.
   The Witness: A lot of times."

3. "Q.: Would you get mad at Fred?
   A.: Yes.
   Q.: Are you mad at Fred now?
   A.: Yes.
   The Court: Why are you mad at Fred now?
   Defense: Objection, your honor.
   The Court: Overruled.
   The Witness: Because what he did to me."

Specifically, defendant contends that the trial justice breached his duty of judicial impartiality by interrupting the examination of the complainant and by asking questions that elicited responses that were unfavorable to defendant. However, we feel that a close examination of the record fails to substantiate defendant's allegations of a breach of the trial justice's duty to maintain the appearance of impartiality. When examined within the context of the entire transcript, the exchange outlined above does not show a lack of impartiality on the part of the trial justice. It would appear that the trial justice's intention was not to advocate the position of either party, but rather to expedite the examination of the seven-year-old witness and to clarify a few matters for the jury. This conclusion is supported by both the neutral manner in which the interrogation was conducted and by the trial justice's charge to the jury, wherein he admonished the jurors not to draw any inferences from his conduct of the trial.

"Now, I have no right to tell you what verdict you should return in this case, and I'm instructing you at the very beginning, from anything that I have said or that anything has transpired in this courtroom from what I have done or what I'm saying, I am in no way attempting to overtly or covertly to tell you what your verdict should be. If you think that you detect a secret instruction from me on this point, my words or conduct, you'll be deceiving yourself. Nor am I trying to tell you to believe or disbelieve any evidence or any witness. You, and you alone, are charged with the responsibility to determine where the truth lies and to discard any untruthful testimony; and I

would not attempt in any way to influence you in your judgment on these matters."

Overall, we find that the interrogation undertaken by the trial justice was well within his discretion and that it did not amount to a breach of the standard of propriety set out by this court in *State v. Amaral* and cases decided subsequent thereto.

Accordingly, the defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the papers are remanded to the Superior Court.