STATE *vs.* JOSEPH A. ST. ANGELO *et al.*

APRIL 17, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   This is an indictment of Joseph A. St. Angelo for procuring the miscarriage of a pregnant woman and also of John F. R. Williams as an accessory before the fact.

The defendants were tried together in the superior court and found guilty. After the denial by that court of each defendant's motion for a new trial, they duly prosecuted bills of exceptions to this court.

Summarized, the indictment charges that St. Angelo did unlawfully and willfully force and thrust into the body and womb of Laura Viveiros, a pregnant woman, a certain instrument, to the grand jurors unknown, with the intent to procure her miscarriage, it not being then and there necessary to cause said miscarriage to preserve her life, against the form of the statute in such case made and provided. The indictment further charges that Williams aided and abetted St. Angelo and in so doing was an accessory before the fact.

The part of the statute, general laws 1938, chapter 606, §22, upon which the indictment is based declares that "Every person who, with the intent to procure the miscarriage of any pregnant woman or woman supposed by such person to be pregnant, unless the same be necessary to preserve her life . . . shall use any instrument or other means whatsoever or shall aid, assist or counsel any person so intending to procure a miscarriage . . . shall be imprisoned . . . ." Under that statute the exception, expressed in the words "unless the same be necessary to preserve her life", is a constituent element of the offense and must be negatived in the indictment and proved as a necessary part of the state's case. In other states where the courts have been called upon to construe a similar statute there is a division of authority. Underhill's Crim. Ev. (4th ed.) 1159, §589; 1 C. J. S. 330, §23 b. (2); 1 R. C. L. 77, §14. The weight of authority and, we think, the sounder reason support the view which we have taken.

Although the indictment in the instant case does contain such a negative averment, the state contends that it is mere surplusage which it is not required to prove. In support of that position the state relies on G. L. 1938, chap. 625, §5, and more particularly on the second sentence thereof. That section is as follows: "An excuse, exception or proviso which is not stated in the enacting clause of a

statute creating a crime, or which is stated only by reference to other provisions of the statute, need not be negatived in the complaint or indictment unless it is necessary for a complete definition of the crime. If a statute which creates a crime permits an act, which is therein declared to be criminal, to be performed without criminality under stated conditions, such conditions need not be negatived."

The applicability of that statute to the offense charged in the instant indictment is not free from difficulty. From one point of view the section would seem to be ambiguous. Under its first sentence a negative averment of the exception in §22 is clearly required, as such exception is stated in the enacting clause of that section. On the other hand, under the second sentence it seems not to be required, since the said exception is plainly a condition which deprives the offense of its criminality. In these circumstances we cannot say what the effect of §5 is generally.

In respect to the particular indictment before us, however, and by way of answer to the state's specific contention on this point, we may say that §5 is a part of the chapter of our general laws entitled "Pleading, Practise and Procedure in Criminal Cases" and first appeared therein by virtue of public laws 1915, chap. 1261. That chapter was designed, among other things, to annul or revise certain archaic rules of criminal pleading and procedure, and otherwise to reform and modernize the existing statutory and common-law system. Whatever the reform that chapter was designed to effect we are of the opinion that §5 aimed at no more than a reform of criminal pleading and that it does not purport to introduce a new rule of criminal evidence or to alter the well-established principles of the substantive law of crimes. One of those principles is that the state must prove every constituent element of the offense charged against the accused. And under the rules of criminal evidence the accused is presumed to be innocent of each such element until the same is proved beyond a reasonable doubt.

On the above view, §5 does not absolve the state from the obligation to prove the negative averment set out in the indictment, as it is a constituent element of the offense charged against St. Angelo. At this point we are not concerned with either the *quantum* or the mode of proof which is necessary to establish that averment. All that we say is that the state must present some evidence to support it in order to make out a case for the jury and avoid a dismissal of the indictment.

In the case at bar, did the state present such evidence, not only of that element but of all the other essential elements of the offense? Did the trial justice properly instruct the jury in the law as to the constituent elements of the offense and on whom lay the burden to prove those elements? These are the questions raised by St. Angelo's exceptions numbered 110, 173, 175 and 176. After carefully examining numerous other exceptions briefed and argued by him, we are of the opinion that only those exceptions are material and require consideration. Nor do we find it necessary to consider the exceptions which Williams has briefed and argued, except his exception 37, to the denial of his motion for a new trial. We shall now proceed to treat the aforementioned exceptions.

Exception 110 is to the denial of St. Angelo's motion to dismiss the indictment at the conclusion of the state's evidence. No exception lies to such denial. This court has held repeatedly that in a criminal case a defendant may not require the trial justice to rule on the sufficiency of the state's evidence, unless he first closes his case. *State* v. *Lorenzo,* 72 R. I. 175; *State* v. *Kozukonis,* 71 R. I. 456; *State* v. *McElroy,* 71 R. I. 379.

However, substantially the same question which St. Angelo sought to raise by that exception he raised later at the conclusion of all the evidence by his motion for a directed verdict, which was denied. Exception 173 is to such denial. In support of that exception St. Angelo contends that there are four elements constituting the offense as it

is charged against him in the indictment, and that in no single instance has the state presented any evidence on which the jury could reasonably find him guilty. Those elements, as he states them, are: First, the pregnancy of the woman; second, his knowledge of, or belief in, the existence of such pregnancy; third, insertion by him of an instrument into the body and womb of the woman with the intent to procure her miscarriage; and, fourth, nonnecessity of the miscarriage to preserve her life. He is most insistent that there is no evidence whatsoever of the fourth element.

As we said above, we think that, under the instant indictment, it was incumbent upon the state to prove all of those elements. But it was not necessary to prove any of them by direct evidence; circumstantial evidence was sufficient. If there was no evidence, either direct or circumstantial, tending to prove any one of such elements, then it was error to deny the defendant's motion for a directed verdict. However, it was the duty of the trial justice in considering such motion to disregard both the credibility of the witnesses and the weight of the evidence, and to view the evidence and draw all reasonable inferences therefrom favorably to the state against whom the motion was made. And we must do likewise in reviewing his action. *State* v. *Wright,* 70 R. I. 39. In doing so we are not concerned with whether he had in mind a correct conception of the law applicable to the evidence. What we are concerned with is whether, in the light of the law as we have herein declared it to be, there is evidence in the record on each element of the offense which entitled the state to a consideration of the case by the jury.

After a careful reading of the entire transcript and viewing the evidence favorably to the state in accordance with the well-established rule above cited, we are of the opinion that there was a question for the jury and that the trial justice did not err in denying defendant's motion for a directed verdict. Viewed in the light of that rule, the evi-

dence tended to show that Laura Viveiros, a single girl of twenty years, had been indulging in frequent sexual intercourse with the defendant Williams, a married man, during July, August and September of 1944; that on September 17, 1944 she missed her menstrual period for the first time, and on the next day or the day after she informed Williams of that fact; that thereupon he said he knew a doctor who would give her some pills to "bring her around"; and that after telling that doctor, who was St. Angelo, about his relations with the girl, he obtained such pills from him.

The evidence tended to prove further that she took the pills on the day when Williams obtained them, about September 20, 1944, and that he told her that St. Angelo had said to him that they would make her "come around" within forty-eight hours; but that if they did not he was to bring her to St. Angelo's office; that the pills did not make her "come around"; that on September 29, 1944, she still not having menstruated, Williams brought her to St. Angelo's office, where St. Angelo inserted certain instruments into her body while she was on the examining table in his private office for about twenty to twenty-five minutes; that thereafter she began to pass blood and for several days afterward she passed large clots of blood and became sick so that she went to her own physician who, after examining her, advised her to go to a hospital. She went to a hospital on November 19, 1944 and there a doctor, who gave her a vaginal examination, removed from her vaginal canal a piece of tissue which the hospital pathologist examined under the microscope and pronounced placental tissue or afterbirth. The doctor who found the tissue testified that, in his opinion, this indicated that she had had a miscarriage within six or eight weeks previous to the time of his examination on November 19, 1944. In this opinion he was corroborated by other medical testimony.

Defendant St. Angelo testified that he gave the pills to Williams; that the pills were merely to bring on menstru-

ation; and that they were customarily prescribed by the medical profession for that purpose. He further testified that on September 29, 1944 he merely examined the prosecutrix with a speculum and a cotton swab to see if she were pregnant; that he found that she was not pregnant but that she was menstruating; and that he told her she would be all right. He also testified that she had a cough when he examined her and that she told him she had cramps.

She had testified previously that she was working regularly in a mill doing manual labor during the period of her associations with Williams; that after she met him she also did extra work for wages at his cafe; that she had never missed her menstrual period before September 17, 1944; and that she did not have a cough when she went to St. Angelo. The physician who examined her at the hospital found no infection or malformation of the uterus, but did find that it was somewhat enlarged; and that there was a flow of blood from it. He also testified that he first gave her "ergotrate" to check the flow. This drug, however, proved ineffective so that it was necessary to dilitate and scrape the inside of the uterus by what is known as a dilatation and curettage operation. In the course of this operation another piece of tissue was found inside the uterus and removed. Some question was raised as to whether this was placental tissue.

Resolving all the doubts and conflicts in favor of the state the jury could have reasonably inferred from all the evidence that, notwithstanding his testimony to the contrary, St. Angelo, on September 29, 1944, had the intention to procure a miscarriage of the prosecutrix when he inserted an instrument into her body; that there was nothing to indicate that it was necessary to do so to preserve her life; that she was actually pregnant; and that he had good reason to suppose that she was pregnant, in view of her previous good health, her previous regularity of menstruation, her long delay in menstruating, from September 17 to September 29, 1944, and the failure of the pills,

which he had prescribed for her, to bring on menstruation. How all these circumstances should be judged in determining the hypothesis of St. Angelo's guilt was a matter for the trial justice to expound to the jury in his charge and could not enter into his consideration of defendant's motion for a directed verdict.

Defendant, however, objected to only two portions of the trial justice's charge and these objections are the bases of his exceptions 175 and 176. Exception 175 is to the following: "in this case,—there is no evidence that a miscarriage was necessary to preserve the life of Laura Viveiros". Immediately following that statement the trial justice said: "There then remains three essential elements that must be proved here, each beyond a reasonable doubt, before the defendant St. Angelo may be found guilty. One, that the woman was in fact pregnant at the time the defendant used an instrument upon her, if he used an instrument upon her; second, that the defendant in fact used an instrument upon her; and third, that in so doing he had the intent to procure her miscarriage." That statement is the subject of exception 176.

It is obvious from those two statements that the trial justice definitely removed from the consideration of the jury one of the elements of the offense, namely, whether the state had shown that it was not necessary for St. Angelo to procure the miscarriage of the prosecutrix in order to save her life. Indeed, he told the jury in effect, if not in so many words, that that element was a matter of affirmative defense and that defendant having failed to present evidence to prove such defense, it was not before the jury for their consideration. From this point of view that was clear error because, as we have hereinbefore declared, this was an element of the offense which, like the other three elements, the state was required to prove beyond a reasonable doubt, and whether it had done so was a question for the jury.

It was no part of the defendant's duty to present evidence of necessity to preserve the life of the woman, but, on the other hand, it was a part of the state's duty to prove that procuring a miscarriage was not necessary in order to preserve her life. True, in the circumstances of the case at bar, very little evidence was required on the part of the state to discharge that burden; and the jury could reasonably have found from the facts in evidence concerning the health, habits, and actual physical conduct of this young girl, coupled with the medical evidence as to the condition and appearance of her uterus, that there was no necessity to procure a miscarriage in order to preserve her life. But that was solely for them to determine after considering and weighing such facts under proper instructions, and not for the trial justice to declare as a matter of law. In doing so he invaded the jury's province as to that element of the offense, and from that point of view also he committed error. St. Angelo's exception 175 is, therefore, sustained.

Under exception 176 St. Angelo contends that the charge was erroneous because the trial justice failed to instruct the jury "that knowledge or belief of pregnancy by the accused is an essential element of the crime", but we see no need to consider this exception at length. The short answer to it, in our opinion, is that such a concept is necessarily comprehended in the instruction given by the court regarding defendant's intent to procure the woman's miscarriage.

Since the effect of our sustaining St. Angelo's exception 175 is the reversal of his conviction, and since Williams' conviction can stand only if St. Angelo's conviction stands, it follows that there must be a new trial of both defendants. For the purpose of the record, therefore, we sustain *pro forma* and without regard to the reasons advanced by him in support thereof, Williams' exception 37 to the denial of his motion for a new trial.

St. Angelo's exceptions 110, 173 and 176, having been considered and found to be without merit, are overruled; his exception 175 and Williams' exception 37 are sustained; and the case is remitted to the superior court for a new trial of both defendants.

*John H. Nolan,* Attorney General, *Raymond F. Henderson,* Special Counsel, for State.

*Joseph Mainelli,* for defendant St. Angelo.

*Francis A. Manzi,* for defendant John F. R. Williams.