STATE *vs.* ANTHONY MONTELLA *et al.*

APRIL 6, 1959.

PRESENT: Condon, C.J., Roberts, Andrews and Paolino, JJ.

Paolino, J. This is an indictment charging the defendants Anthony Montella, Armando Sementelli, Guido Proia, and William Spirito with conspiracy to violate the election laws. They were found guilty by a jury in the superior court and their motions for a new trial were denied by the trial justice. Thereafter each defendant was sentenced to serve a term of five years in the adult correctional institutions. The case is now before us on the defendants' exceptions to the refusal of the trial justice to grant a directed verdict, to the denial of their motions for a new trial, and to certain other rulings made by the trial justice. Hereinafter, unless otherwise specified, the term "defendants' exceptions" or terms of a similar tenor will refer to the exceptions of each defendant, singly and collectively.

It appears from the evidence that at the special election held on July 12, 1955 defendants were the election officials at one of the polling places in the city of Providence, Ar-

mando Sementelli being the warden, Anthony Montella the clerk, and Guido Proia and William Spirito the supervisors. The election was held pursuant to the provisions of public laws 1955, chapter 3487, for the purpose of approval or rejection of certain amendments to the state constitution. The evidence shows that certain flagrant irregularities occurred at such election. The indictment specifically charges defendants with conspiring "to cause ballots and votes to be wrongfully cast in the names of other persons not voting, whose names as electors appeared upon a certain list of electors" used in the voting district in question.

Although defendants have filed numerous exceptions, after carefully reading the transcript we deem it necessary to consider only the exceptions to the denial of their motions for a directed verdict and for a new trial. There is no merit in the exceptions to the denial of their motions to dismiss the indictment at the conclusion of the state's case. *State v. St. Angelo,* 72 R. I. 412, 416. We shall therefore discuss only that part of the evidence which is pertinent to a determination of the first above-mentioned exceptions.

The state presented direct evidence showing that defendants were in exclusive control of the voting polls on the day in question; that the warden had complete control of the ballot box and had locked it with a padlock before the voting started; that the clerk and the supervisors had charge of the voting list; and that it was their duty to check off the names of all persons voting. The state also presented testimony that the padlock was unlocked at about 3 p.m.; that when the ballot box was opened at the close of the polls for the purpose of counting the votes cast, a stack of ballots neatly piled about six or eight inches high was seen on top of other ballots which were spread all over the bottom of the box; that not more than 50 odd persons actually voted; and that more than 300 ballots out of a total of 568 were cast in the names of persons who did not actually vote.

Although it is reasonably clear from the foregoing testimony that a violation of the election laws had been committed, no direct or positive evidence of wrongdoing on the part of any of the defendants was presented by the state. However, it presented the opinion testimony of Elizabeth McCarthy who qualified as an expert on cross marks. In offering Miss McCarthy as a witness the state pointed out to the court that her testimony was not being presented to establish the identity of the person or persons who marked the crosses on the ballots, but to prove common authorship of the crosses on certain ballots. By such testimony the state proposed to show that of the 500 odd ballots in question all of them except approximately 59 were marked by three and in no case more than four people. However, the trial justice ruled that she was not qualified to testify as an expert on check marks on the voting lists. Her testimony concerning such marks was therefore inadmissible. The opinion testimony which she gave relates solely to the crosses on the ballots examined by her.

She stated that she spent about seven hours a day for three days examining 568 ballots and that as a result of such study she was able to form an opinion as to the common authorship of the crosses examined, but not as to the identity of the person or persons who made such crosses. She divided the ballots examined into five groups or classifications and then testified specifically as to each group.

As to the first group, which consisted of 69 Christian crosses, she testified such crosses were made by one hand; that those in the second group, which consisted of 162 small, close, neatly made crosses, were made by a different hand; that those in the third group, which consisted of 259 tall, thin, collapsed crosses which had the appearance of a capital K, were made by yet another hand.

In the fourth group the witness included 19 ballots. The marks on 9 of these were large, full crosses and the marks on 10 of them were check marks. She testified that in her

opinion one hand made all of the 9 large crosses and a different hand made the check marks, but she expressed no opinion as to whether either the hand that made the large crosses or the one that made the check marks was the same hand that made the crosses in any of the first three groups. The fifth group consisted of 59 ballots. She testified that in her opinion the crosses on these ballots were made by 59 different people.

Each of the defendants took the stand in his own defense. Their testimony was in substance a denial of the offense for which they had been indicted or of any other wrongdoing.

It appears from the record that the warden was represented by the public defender and the other defendants were represented by private counsel. After all the evidence was in, defendants' motions for a directed verdict were denied. Their exceptions to the denial of such motions are based on their contention that there is no evidence to support the offense with which they were charged.

It is true that the burden was on the state to prove beyond a reasonable doubt the existence of a conspiracy and defendants' connection therewith. But it was not necessary to prove by direct evidence either the *corpus delicti* or defendants' connection with such offense. Their guilt could be proved by circumstantial evidence as well. On a motion for a directed verdict in a criminal case the evidence and all inferences which can reasonably be drawn therefrom must be viewed most favorably to the state. On such a motion the trial justice may not weigh the evidence or pass upon the credibility of witnesses. *State* v. *St. Angelo,* 72 R. I. 412, 417; *State* v. *Wright,* 70 R. I. 39.

Although the state has not presented any direct evidence showing the commission of the offense charged and defendants' connection therewith, it is our opinion that there was evidence from which the jury could have drawn inferences favorable to the state. The question of the weight

to be given to such inferences, if any were found, was not pertinent to the disposition of the motions for a directed verdict. Neither can we consider the question of weight at this time. After carefully reading the transcript and viewing the evidence favorably to the state in accordance with the rule above cited, it is our opinion that there was a question for the jury and that the trial justice did not err in denying the motions for a directed verdict. This exception is overruled.

The defendants' motions for a new trial are based on the usual grounds that the verdict is against the law and the evidence and the weight thereof. In his decision denying such motions the trial justice, after reviewing the testimony, stated there was no doubt in his mind that all defendants in one way or another had conspired. He stated further that the inescapable inference from all the facts indicated acts which could not have been committed except by concert and agreement, prearranged or arranged on the spot. He not only concluded that the verdict was supported by the evidence, but he also expressed his own independent view that the evidence was sufficient to prove defendants' guilt beyond a reasonable doubt. After stating his belief that the verdict did substantial justice between the parties, he approved it and denied the motions. Such a decision will not be disturbed unless it is clearly wrong. *State* v. *Prescott,* 70 R. I. 403, 420.

While great weight is given to the decision of a trial justice on such a motion, his opinion is not conclusive. A careful examination of all the evidence convinces us that the trial justice was clearly wrong in approving the verdict. The state undoubtedly proved that a violation of the election laws had been committed on the day in question. While there is no direct evidence connecting the defendants with such violation, it could reasonably be inferred that they, or some of them, were connected therewith. But they

were not indicted for such an offense. The indictment charges them with a conspiracy.

It may well be that even the existence of a conspiracy may reasonably be inferred from the positive evidence that a violation of the election laws had taken place and the undisputed evidence that defendants were present and in exclusive control of the voting polls when such violation occurred. However, a defendant cannot be convicted unless the *corpus delicti* and the defendant's participation in the commission of the crime are established by the state beyond a reasonable doubt. *State* v. *Boswell,* 73 R. I. 358, 363. There is no direct evidence that these defendants conspired as charged. Their guilt can be proved if at all only by circumstantial evidence. It is not an unreasonable hypothesis to assume from such evidence that the conspiracy may have been committed by only two or three of the defendants. But under our law an accused is presumed to be innocent until proved guilty beyond a reasonable doubt. And it is fundamental that such proof must not only be consistent with his guilt, but at the same time it must be inconsistent with a reasonable hypothesis that he is innocent. *State* v. *DiNoi,* 59 R. I. 348, 368; *State* v. *Blood,* 68 R. I. 160, 162.

As we have already observed, the proof of the connection of defendants with the conspiracy rests entirely upon circumstantial evidence. Only by inference from such evidence can the verdict of guilt against all defendants be sustained. In our opinion such evidence is not sufficient to prove beyond a reasonable doubt the participation of all defendants in the conspiracy.

Although the jury could reasonably infer from the evidence the existence of an agreement, prearranged or arranged on the spot, we are of the opinion that it would be mere speculation or conjecture to superimpose thereon the further inference that all defendants participated in the

conspiracy. In our opinion the evidence fails to exclude every reasonable hypothesis but that of defendants' guilt of conspiracy. Where the evidence is entirely circumstantial, as it is here, it must do so. Even if we assume the existence of a conspiracy and also assume that the illegal acts proved could not have taken place without an agreement on the part of whoever was responsible for their accomplishment, it does not reasonably follow from the evidence that all the defendants were necessarily involved in such conspiracy.

The defendants were presumed to be innocent until proved guilty beyond a reasonable doubt. They were entitled to the benefit of the doubt if the evidence did not exclude every other reasonable hypothesis but that of their guilt. Whatever may have been the nature of the defendants' acts they were entitled to the full benefit of the presumption of innocence until proved guilty beyond a reasonable doubt. That presumption exists both as to the *corpus delicti* and their connection therewith. Our conclusions are based not on the credibility of witnesses but rather on the insufficiency of the evidence to exclude every other reasonable hypothesis but defendants' guilt. For these reasons we are of the opinion that the trial justice was clearly wrong in denying the motions for a new trial.

The defendants' exceptions to such denials are sustained, and the case is remitted to the superior court for a new trial.

ANDREWS, J., did not participate in the decision.

*J. Joseph Nugent,* Attorney General, *Raymond J. Pettine,* Assistant Attorney General, for State.

*Vincent P. Marcaccio, Jr.,* for defendants Anthony Montella, Guido Proia, and William Spirito.

*Aram A. Arabian,* Public Defender, for defendant Armando Sementelli.