318 A.2d. 463.

STATE *vs.* ROBERT WALSH.

APRIL 24, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. During the late hours of Christmas Eve, 1968, Robert Walsh had an altercation with his brother William. The records of the Rhode Island Hospital indicate that William was admitted to that institution on December 24 at 11:21 p.m. for treatment of a "gunshot wound in [the] head." Robert was indicted on a charge of assaulting William with an intent to murder him. Trial was held in the Superior Court. There, Robert maintained that he had not shot William. He insisted that while defending himself from his brother's karate style of attack, he had struck William on his head with the barrel of an empty .38-caliber revolver. William was just as emphatic that the gun was not empty and that Robert had shot him. The jury returned a verdict of guilty, but on a reduced charge, to wit, an assault with a dangerous weapon. Robert's appeal consists of his exception[1] to a part of the charge and an attempt to seek an answer to a certified question of doubt and importance.

In discussing the presumption of innocence, the trial justice charged the jury that this presumption remained with Robert "* * * up to the point when the State proves him guilty beyond a reasonable doubt, at which time if the State does so prove him guilty, then the presumption of innocence vanishes." Robert contends that the trial justice erred when he refused to inform the jury that the presumption of innocence accompanied Robert throughout the

---

[1]At the conclusion of the trial in June 1971, Robert filed notice of his intention to prosecute a bill of exceptions to this court. When the transcript was prepared in February 1973, the vehicle for appellate review was no longer a bill of exceptions but an appeal. We will, therefore, consider the 1971 notice as the filing of a notice of appeal required by our Rule 3.

trial and "continues all the way into the juryroom," and until the state has sustained its burden of proof. Language describing the presumption as leaving the courtroom and traveling "into the juryroom" can be found in *State* v. *Esposito*, 73 R. I. 94, 54 A.2d 1 (1947).

Robert argues that the omission of the reference to the juryroom presence of the presumption opened the way for the jurors to feel free to make up their minds as to his guilt once the prosecution had presented its case in chief. Robert apparently forgets that once the jury had been impaneled and at the end of each day's testimony, the trial justice admonished the jurors to keep an open mind as to his guilt until the time they retired to the juryroom after hearing all the evidence, closing arguments, and the charge.

Apart from the trial justice's frequent admonitions relative to openmindedness, we believe that the phrase "into the juryroom" found in *Esposito* is just so much rhetoric used by one trying to give a picturesque description of the presumption's life-span. Concededly, a crucial issue is, just when does the presumption of innocence cease to be operative? Long ago this court eschewed the colorful language of *Esposito* and said in plain language that the presumption "* * * vanishes when the mind is convinced by evidence that the accused did commit the crime." *State* v. *Quigley*, 26 R. I. 263, 58 A. 905 (1904). On other occasions it has been said that the presumption remains with the defendant "until proof of his guilt shall have been established"[2] or "until proved guilty beyond a reasonable doubt"[3] or "until the state proves him guilty"[4] or "until he is proven guilty beyond a reasonable doubt."[5]

---

[2]*Avella* v. *Almac's Inc.,* 100 R. I. 95, 211 A.2d 665 (1965).

[3]*State* v. *Montella,* 88 R. I. 469, 149 A.2d 919 (1959).

[4]*State* v. *Blood,* 68 R. I. 160, 26 A.2d 745 (1942).

[5]*State* v. *Verde,* 66 R. I. 33, 17 A.2d 39 (1940).

■ Once the give and take in the juryroom has ended and the requisite unanimity of proof of guilt has been reached, the presumption vanishes. One may say that the presumption is not saturated with so much sanctity that it immunizes an accused from actual proof of guilt or extends its life one second beyond that moment when the reason and judgment of the jury accept the guilt of the defendant as having been proved. *Carr* v. *State,* 192 Miss. 152, 4 So.2d 887 (1941). In fact, it yields with regard to each respective juror as soon as and as long as he is convinced beyond a reasonable doubt of the defendant's guilt.

We think it plain that the charge as given was a correct explanation as to how long defendant could enjoy the benefit of the presumption of innocence.

■ The certified question comes from that portion of the charge in which the trial justice informed the jury that by statute it could find Robert guilty of a lesser offense than the one listed in the indictment if they believed that the prosecution had not proven an assault with intent to kill but did find an assault with a dangerous weapon. The statute is G. L. 1956 (1969 Reenactment) §12-17-14. The question asked is whether this statute is unconstitutional in the light of the language of art. I, sec. 7 of the Rhode Island constitution which states that no person shall be held answerable for a capital or infamous crime unless on presentment or indictment by a grand jury. An assault with a dangerous weapon is an "infamous crime," because it carries with it a potential penalty of more than a year's imprisonment. *State* v. *Rezendes,* 105 R. I. 483, 253 A.2d 233 (1969).

Earlier, when the question was certified to us, we refused to answer it. *State* v. *Walsh,* 108 R. I. 518, 277 A.2d 298 (1971). The question was certified at the time the trial justice was considering Robert's motion for a new trial. There is nothing in the record to show that after our re-

122

mand, the question was ever presented to the trial justice for his consideration.

At the time the question was first before us, we did not have the advantage of the transcript. The transcript shows that the precise question presently before us was never raised by way of an exception. Since the issue in the aborted certified question concerns what is an alleged violation of an unquestionably basic constitutional right, we will now proceed to consider the constitutionality of §12-17-14 rather than have defendant make a return visit to us by the circuitous route of post-conviction relief. *State* v. *Maloney,* 109 R. I. 166, 283 A.2d 34 (1971).

An indictment serves to inform the accused of the nature of the offense with which he is charged so that he can make an adequate defense as well as be able to avail himself of the conviction or the acquittal so that he can avoid the threat of double jeopardy. *State* v. *Smith,* 56 R. I. 168, 184 A. 494 (1936); *State* v. *Winne,* 12 N. J. 152, 96 A.2d 63 (1953). Furthermore, we have previously decided that an assault with a dangerous weapon is a lesser but necessarily included offense within the charge of an assault with an intent to murder. *State* v. *Raposa,* 100 R. I. 516, 217 A.2d 469 (1966).

The issue to be resolved is one of first impression. However, §12-17-14 is but a reaffirmation of the common law rule[6] that where an indictment charges an offense which includes within it another lesser offense, it is sufficient to prove so much of the charge as demonstrates that the accused is guilty of a crime therein contained, although not to the full extent charged against him. *State* v. *Shapiro,* 29 R. I. 133, 69 A. 340 (1908); 4 Wharton, *Criminal Law*

[6]Chitty says, "And where the accusation includes an offense of inferior degree, the jury may discharge the defendant of the higher crime, and convict him of the less atrocious." 1 Chitty, *Criminal Law* §638 (3d Am. ed. 1836).

& *Procedure* §1799 at 631 (1957). Consequently, a defendant is charged with the knowledge that an accusation of the greater crime carries with it the charge that he has committed all the necessarily included lesser offenses that make up the greater crime. He will not be heard to complain that he is not prepared to defend against the lesser offenses or that the statute authorizing the return of a guilty verdict on the lesser offenses deprives him of his constitutional right to a presentment on indictment relative to the "infamous crime"[7] which the jury believes he has committed. *State* v. *Ritchie,* 172 La. 942, 136 So. 11 (1931); *State* v. *Jankowski,* 82 N. J. L. 229, 82 A. 309 (1912); *Territory* v. *Alarid,* 15 N. M. 165, 106 P. 371 (1909); *State* v. *Gibbons,* 228 Ore. 238, 364 P.2d 611 (1961); *State* v. *Averill,* 85 Vt. 115, 81 A. 461 (1911); *Holesome* v. *State,* 40 Wis.2d 95, 161 N.W.2d 283 (1968); *see also, State* v. *Waters,* 39 Me. 54 (1854).

Accordingly, we find no infringement of Walsh's constitutional rights.

The defendant's appeal is denied and dismissed.

Mr. Chief Justice Roberts did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*John P. Bourcier,* for defendant.

---

[7]The "infamous crime" portion of our state's constitution will soon be part of our historical past. In the fall of 1973 the people ratified a proposal amending art. I, sec. 7 so as to authorize the Legislature to establish a system whereby crimes may be charged either by way of an indictment or by criminal information. All reference to an infamous crime has been deleted. *See State* v. *Berker* 112 R. I. 624, 314 A.2d 11 (1974).