402 A.2d 585.

STATE *v.* WILLIAM H. SUNDEL.

JUNE 12, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

640

BEVILACQUA, C.J. The defendant was indicted on charges that he unlawfully possessed controlled substances, cocaine and cannabis, with the intent to deliver them in violation of G.L. 1956 (1968 Reenactment) §21-28-4.01(A)(1), -(2)(a). After a trial on these charges, a Superior Court jury found the defendant guilty of possession of the two controlled substances but not guilty of the two charges of possession with intent to deliver. The court then imposed a fine of $500 for possession of the cannabis but deferred sentence for possession of the cocaine. The defendant appeals.

The facts as established during the trial are substantially undisputed. On October 10, 1975, at approximately 7:15 a.m., federal and state narcotic officers and local police officers[1] went to defendant's home to arrest him pursuant to a federal arrest warrant. The agents positioned themselves at various areas around the house, with several of them locating themselves near a sliding glass door. One of the federal agents knocked at the glass door and, after identifying himself, called defendant by name and requested that he open the door. The agent also stated that he had a warrant to arrest defendant.

After waiting several minutes, agent Marchand, who was positioned at the sliding glass door, heard another agent yell, "[t]hey're running around inside the house." Using a sledge hammer, he smashed the glass door in order to gain entry into the house. The agents entered, went upstairs and found defendant in a bedroom with another person. After his

---

[1] Initially, the individuals present to execute the arrest warrant were Federal Drug Enforcement Administration Special Agents McCarthy, Lavoie, Lemon, and Marchand; State Division of Drug Control Agents Ray and Capalbo; and Newport Police Department Lieutenants Janes and Costello. Sometime later, a uniformed Newport police officer also went to the defendant's house. For convenience, we will refer to the law enforcement officials as "agents."

arrest, the agents led defendant downstairs. Once downstairs, the agents noticed various items on a coffee table, some of which they believed to be narcotic contraband. While the federal agents transported defendant to Boston, Massachusetts, pursuant to the arrest warrant, state narcotic inspectors Capalbo and Ray obtained a warrant to search defendant's residence. Pursuant to the warrant, the inspectors seized various quantities of cocaine, cannabis and other paraphernalia in the house.[2] One of the federal agents accompanying defendant to Boston testified at the trial that during this trip defendant admitted that the cannabis and cocaine were for his own use.

Prior to trial, defendant filed a motion to suppress the seized evidence. At the suppression hearing, defendant testified that on the morning of his arrest he was awakened by the sound of breaking glass. He further testified that within seconds the agents had surrounded him, holding him at gun point. The defendant, partially contradicting the testimony of the agents, stated that he did not hear anyone knock or yell prior to the agents' entry. Upon the conclusions of the hearing, the trial justice denied the motion to suppress the seized evidence, whereupon the case proceeded to trial.

Following the close of testimony, the trial justice instructed the jurors with the law of the case. Although defendant had previously requested the trial justice to charge the jurors with the "reasonable hypothesis of innocence" rule, this instruction was not given. The trial justice did charge, *inter alia*, over defendant's objection, that if the jurors were not satisfied that defendant was guilty of the offenses charged, but were satisfied that defendant had simple possession of either or both of the controlled substances, they could find defendant guilty of the lesser offense of simple "possession."

On appeal defendant raises four alleged errors made by the

---

[2]The agents seized approximately 1½ pounds of a substance later determined to contain cannabis and an unspecified amount of cocaine in three containers. Among the other items seized were a pipe, "zigzag" cigarette papers, a sifter, a scale, a knife and a cutting board.

trial justice.

## I

In his first assignment of error defendant contends that the trial justice was in error in denying his motion to suppress the seized evidence. The defendant does not dispute the right of the agents to be at his home pursuant to the federal arrest warrant. He does argue, however, that the large number of officers present, the time of day the arrest was made and the fact that the agents had a sledge hammer all indicate that the agents never intended to allow him to answer the door. He further argues that because the agents clearly intended to break into the house, their entrance was illegal thus requiring the trial justice to suppress the evidence seized as a result of this intrusion.

The state contends that the entrance by the agents was legal. The state points to the record which indicates that the agents knocked at the door, identified themselves as federal agents and waited a reasonable time for defendant to respond before smashing the glass door and entering the house. The state concludes from these facts that the entrance into the house was legal.

In Rhode Island we follow the common-law rule that an officer must first knock and announce his identity and purpose and wait a reasonable period of time before breaking into and entering premises to execute an arrest warrant. *State v. Carufel*, 112 R.I. 664, 667-68, 314 A.2d 144, 146 (1974). Although the origin of this rule concerning arrest and search warrants is rooted in the common law, the rule itself has constitutional dimensions. The knock and announce requirement is embodied in the fourteenth amendment. *Id.*

This rule is limited by certain qualifications and exceptions that apply under exigent circumstances. *State v. Slezak*, 115 R.I. 599, 602, 350 A.2d 605, 606 (1976); 112 R.I. at 668, 314 A.2d at 146. A no-knock search may be sustained, where the police, based on previous information and certain events at the scene, are confronted with an emergency situation when

644

approaching the premises. *See People* v. *Dumas*, 9 Cal. 3d 871, 878, 512 P.2d 1208, 1213, 109 Cal. Rptr. 304, 309 (1973). Thus the officer executing the warrant need not knock and announce himself when to do so would lead to the destruction of the evidence or increase the danger to the officer's personal safety, where persons will escape and where it is evident that the officers' purpose is known to those against whom the warrant is directed. 115 R.I. at 602, 350 A.2d at 606-07; 112 R.I. at 668, 314 A.2d at 146; *State* v. *Johnson*, 102 R.I. 344, 352, 230 A.2d 831, 835-36 (1967).

When constitutional rights are involved as in the instant case, we shall independently examine the facts, findings and the record of the lower court to determine whether the trial justice erred in ruling on the motion to suppress. *State* v. *Smith*, 121 R.I. 138, 142, 396 A.2d 110, 113 (1979). We are of the opinion that the record clearly indicates that the execution of the arrest warrant was proper. There is uncontradicted testimony that the agents, after announcing their identity and the reason for their presence at defendant's home, waited several minutes before breaking the glass door and entering the house. There was further testimony that the officers did not break through the door until one agent saw someone running around inside the house. The motion to suppress was therefore properly denied.

## II

The defendant also contends that the trial justice erred in not granting defendant's motion for a judgment of acquittal. The defendant argues that, because he was arrested upstairs in his bedroom and the articles seized pursuant to the search warrant were found downstairs, the trial justice impermissably speculated that the articles belonged to defendant as opposed to the other person present in the house. The defendant further argues that the evidence was insufficient to establish an intention on his part to deliver the drugs. In considering a defendant's motion, the trail justice must view the evidence and the reasonable inferences of which it is susceptible in the light most favorable to the state; and the

motion should be granted if the evidence, so viewed and without regard to either its weight or credibility, is not sufficient to warrant a jury in finding that guilt has been established beyond a reasonable doubt. *State* v. *Merola*, 118 R.I. 485, 486, 374 A.2d 804, 805 (1977); *State* v. *Wilbur*, 115 R.I. 7, 15-16, 339 A.2d 730, 735 (1975); *State* v. *Murphy*, 113 R.I. 565, 572-73, 323 A.2d 561, 565 (1974); *State* v. *DeGregory*, 113 R.I. 434, 436, 322 A.2d 52, 53 (1974).

In *State* v. *Gilman*, 110 R.I. 207, 291 A.2d 425 (1972), this court said that possession of a proscribed substance can give rise to the inference that the possessor knows what he possesses, especially if it is in his hands, on his person, in his vehicle, or on his premises. In this case, defendant does not deny that the drugs and narcotic paraphernalia were found in his house. Furthermore, there is the uncontradicted testimony of one of the federal agents that defendant admitted that the controlled substances on the coffee table were for defendant's personal use. Accordingly, sufficient evidence is present from which reasonable inferences could be drawn that defendant had knowledge of the presence of the large quantity of controlled substances in his house, that the drugs belonged to him and that defendant intended to use the narcotic paraphernalia in the preparation and delivery of the drugs. Therefore, defendant's motion for a judgment of acquittal was properly denied.

### III

The defendant next contends that the trial justice erred when, in instructing the jury pursuant to G.L. 1956 (1969 Reenactment) §12-17-14, he stated that

> "[w]henever any person is tried upon an indictment, and the jury shall not be satisfied he is guilty of the whole offense, but shall be satisfied that he is guilty of so much thereof as shall substantially amount to an offense of a lower nature, the jury may find him guilty of such lower offense."

The trial justice, in effect, instructed the jurors that if they

were not satisfied that the state had proven defendant guilty of possession with intent to deliver the controlled substances, but were satisfied that defendant had possession of either or both of those controlled substances, they could find defendant guilty of possession of controlled substances.

The defendant argues that this portion of the instruction was improper because he was charged with possession with intent to deliver controlled substances and not with simple possession. The defendant further contends that because he was not charged with possession, he did not argue, as did the defendant in *Ravin* v. *State*, 537 P.2d 494 (Alaska 1975), that his right to privacy was violated by the seizure of marijuana in his home.

We addressed this issue in *State* v. *Walsh*, 113 R.I. 118, 318 A.2d 463 (1974), where we said that §12-17-14 merely affirms the common-law rule that when an indictment charges an offense that includes within it another lesser offense, it is sufficient to prove so much of the charge as demonstrates that the accused is guilty of a crime therein contained, although not to the full extent charged against him.[3] As a result, defendant is charged with the knowledge that an accusation of the greater crime carries with it the charge that he has committed all the necessarily included lesser offenses that are part of the greater crime. 113 R.I. at 122-23, 318 A.2d at 466.

The indictments in the instant case charged defendant with possession of cannabis and cocaine with intent to deliver. In order to be found guilty of these charges, one element that had to be proven was possession of the controlled substances. Therefore it was not error to charge the jury regarding the lesser-included crime.

---

[3]This situation is also provided for in the Superior Court Rules of Criminal Procedure. Super. R. Crim. P. 31 provides in pertinent part:

(c) Conviction of Less Offense. *The defendant may be found guilty of an offense necessarily included in the offense charged* or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense. (Emphasis added.)

## IV

The defendant finally contends that the trial justice's failure to charge the jury with the "reasonable hypothesis of innocence" rule was reversible error. Under this rule, a finding of guilt based upon circumstantial evidence requires that the facts and circumstances taken together are not only consistent with a hypothesis of guilt, but also inconsistent with any reasonable hypothesis of innocence.[4] *State* v. *Aurgemma*, 116 R.I. 425, 435 n.6, 358 A.2d 46, 52 n.6 (1976).

Our reply to defendant's request for this instruction is that the evidence of his guilt did not rest entirely on circumstantial evidence. As we have previously stated, the record contains the uncontradicted testimony of the federal agent who accompanied the defendant after the arrest. The agent testified that the defendant admitted that cocaine and cannabis were in the house and that they were for his personal use. Because the defendant's conviction was not based entirely upon circumstantial evidence, he was not entitled to the "reasonable hypothesis of innocence" instruction. Therefore the trial justice did not err in refusing to give that instruction.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the Superior Court.

*Dennis J. Roberts*, Attorney General, *James H. Leavey*, Assistant Attorney General, for plaintiff.

*John A. O'Neill, Jr.*, for defendant.

---

[4] In *State v. Roddy*, No. 76-390 C.A. (R.I., filed Apr. 25, 1979), we stated that an instruction on circumstantial evidence which cautions a jury that a defendant should not be found guilty unless the facts and circumstances proven excluded every reasonable hypothesis of innocence was unnecessary in light of the similar probative effects of direct and circumstantial evidence. Although this jurisdiction no longer adheres to the "reasonable hypothesis of innocence" rule, the present case arose prior to our holding in *Roddy*.