STATE

v.

Ronaldo PEREZ.

No. 78–399–C.A.

Supreme Court of Rhode Island.

July 24, 1980.

Dennis J. Roberts, II, Atty. Gen., Stephen Lichatin, III, Sp. Asst. Atty. Gen., Chief, App. Div., for plaintiff.

Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

MURRAY, Justice.

On October 23, 1977, an indictment was returned by a Providence County grand jury charging the defendant Ronaldo Perez (Perez)[1] with robbery in violation of G.L. 1956 (1969 Reenactment) § 11–39–1. At a pretrial hearing Perez moved to suppress an oral statement made by him during a police investigation of the robbery. A Superior Court justice granted defendant's motion to suppress, prompting the state to appeal pursuant to G.L.1956 (1969 Reenactment) § 9–24–32, as amended by P.L.1972, ch. 169, § 10.[2]

1. The indictment in this matter was returned against "Ronaldo Perez, alias John Doe." The defendant, however, signed the acknowledgement on his personal recognizance—release form, "Rolando Perez." Consequently, defendant is referred to at different times throughout the record as either "Rolando" or "Ronaldo."

2. General Laws 1956 (1969 Reenactment) § 9–24–32, as amended by P.L.1972, ch. 169, § 10, in pertinent part provides:

"In any criminal proceeding, the attorney–general shall have the right to object to any finding, ruling, decision, order or judgment of the superior court or family court, and the attorney–general may appeal such findings,

The pertinent facts are not in dispute. The salient portions of the testimony elicited at the suppression hearing can be summarized as follows. On the night of September 5, 1977, a robbery occurred at a Dunkin' Donuts store in the city of Providence. That night, the Providence police arrested Perez as a suspect in the robbery and took him to police headquarters.

Detective Chester L. White (White) testified that he first saw Perez at police headquarters at approximately one or one–thirty on the morning of September 6. White advised Perez that he was a suspect in a robbery and then read Perez his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)[3] from a form used by the Providence police. White asked the defendant if he was willing to sign a waiver–of–rights form, but Perez refused to do so. Thereafter Perez was placed in a line–up before the complainant, who failed to identify him as a participant in the robbery, and Perez was subsequently released.

The following day the police contacted Perez and asked him to come to headquarters for questioning. Perez, accompanied by an attorney, arrived that afternoon and met with detectives Alfred L. Mintz (Mintz) and Robert E. Trafford (Trafford). Trafford asked the attorney if Perez would sign a waiver–of–rights form. The attorney responded that he did not want his client to sign or say anything at that time. Trafford then proceeded to read the rights form to Perez.[4] He prefaced the *Miranda* warnings contained in that document with a reading of the portion of the form which said, "I, Rolando Perez, having been informed that I am a suspect in the crime of robbery * *." According to the testimony of Detective Mintz, defendant said at that point, "Robbery? How can you charge me with robbery? I was out in the car."[5] The attorney quickly admonished Perez: "I told you not to say anything. Now be quiet." After Perez's outburst Trafford read to him the portion of the form containing the *Miranda* warnings. He again asked Perez if he would sign the waiver form, but Perez refused on the advice of his attorney.

The state subsequently indicted Perez for his alleged participation in the robbery. Prior to trial he moved to suppress the statement, contending that he was on the threshold of interrogation when he made his statement and that the state had not met its burden of proving that he had waived his right against self–incrimination. The trial justice granted defendant's motion.

The state on appeal contends that it was error for the trial justice to suppress Perez's statement because that statement was made voluntarily and did not result from custodial interrogation by the Providence police. The state asserts in light of those conclusions that *Miranda v. Arizona, supra,* and its progeny do not require suppression of Perez's statement. The state also contends that if we determine that Perez was being interrogated at the time he made his inculpatory remark, his statement constituted a waiver of his constitutional right against self–incrimination.

In *Miranda* the Supreme Court established certain procedural safeguards designed to protect the rights of an accused, under the Fifth and Fourteenth Amend-

rulings, decisions, orders or judgments to the supreme court at any time before the defendant has been placed in jeopardy * * *."

**3.** In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court enunciated these rights to be that a defendant

"must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for

him prior to any questioning if he so desires." *Id.* at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

**4.** The full text of the rights form is set forth in the Appendix to this opinion.

**5.** There was some discrepancy between the testimonies of Detective Mintz and Detective Trafford concerning defendant's statement. Detective Trafford testified that defendant said, "You can't charge me with robbery, I was out in the car." The defendant, however, does not dispute the substance of his statement.

ments, to be free from compelled self-incrimination during custodial interrogation. *Fare v. Michael C.*, 442 U.S. 707, 709, 99 S.Ct. 2560, 2563, 61 L.Ed.2d 197, 202 (1979). The Court explained that custodial interrogation meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. *See State v. Vargus*, 118 R.I. 113, 120, 373 A.2d 150, 153 (1977). Recently, the Supreme Court in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) further defined the term "interrogation" as used in *Miranda*:

"We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect * * *.* A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." *Id.* at ——, 100 S.Ct. at 1689–90, 64 L.Ed.2d at 307–08. (Emphasis added.)

■ The Fifth Amendment serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. *Miranda v. Arizona*, 384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719. "[W]ithout proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work

to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.*

■ A defendant may not, however, invoke the Fifth Amendment to bar the admission of incriminating statements unless such statements are the product of custodial interrogation:

"Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Id.* at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

■ In the instant case, the state does not dispute that defendant was in custody at the time he made the incriminating statement. We therefore must determine whether or not that statement was the product of police interrogation. To make that determination we must independently examine the facts, findings and the record of the lower court. *State v. Sundel*, R.I., 402 A.2d 585, 589 (1979); *State v. Smith*, R.I., 396 A.2d 110, 113 (1979).

■ The record discloses that Perez's incriminating remark was not in response to express questioning by the police. Thus, Perez's statement will not be deemed the product of police compulsion unless the reading of the rights form constituted the "functional equivalent" of interrogation. *Rhode Island v. Innis*, 446 U.S. at 301, 100 S.Ct. at 1689, 64 L.Ed.2d at 308.

The portion of the rights form which the police read to defendant did not accuse him of robbery but merely advised him that he was a suspect in a robbery they were investigating.[6] Absent such a prefatory statement, the delineation of *Miranda* rights

---

6. Our examination of the waiver-of-rights form used by the Providence police leads us to conclude, however, that a verbatim reading of this form using the first-person singular pronoun, "I," to advise a defendant of his *Miranda*

rights may be somewhat confusing to a defendant. A much better practice would be for the police to give the *Miranda* warnings using the second person pronoun, "you."

would have little meaning. We cannot say that the police should have known that reading that portion of the rights form to Perez was reasonably likely to elicit an incriminating response from him. A contrary ruling would impose an ironic twist on the police's attempt to effectuate *Miranda*.

We must conclude that the actions of the police in this case did not constitute "interrogation" within the meaning of *Rhode Island v. Innis* and that, therefore, the defendant's statement need not be suppressed.

Since we hold that Perez was not being interrogated, his statement was not compelled for purposes of his Fifth Amendment right against self–incrimination. This privilege not having attached at the time he made his statement, we do not reach the issue of whether the defendant voluntarily waived his right against self–incrimination.

For these reasons, the state's appeal is sustained, the decision of the trial justice granting the defendant's motion to suppress is vacated, and the case is remanded to the Superior Court for further proceedings.

APPENDIX

## RIGHTS

States #1 full

TIME _4:47 Pm_ STATEMENT TAKEN BY _Det. Robert E. Safford_

DATE _9-6-77_

OFFICE OF _Detective Div., Prov-Police._

I, _Rolando Perez_, having been informed that
I am a suspect in the crime of _Robbery_,
voluntarily, without threats or promises on the part of the police, make the following statement to
members of the _Det. Div._ _Prov._ Police Department
after having been advised that:

1. I do not have to give a statement.

2. I have the right to remain silent.

3. Anything I say can and will be used against me in a court of law.

4. I have the right to the presence of an attorney prior to and during any questioning by the police.

5. I have the right to the presence of an attorney during a lineup or confrontation of witnesses, if any line-up or such confrontation takes place.

6. If I cannot afford an attorney, one will be appointed for me prior to any questioning, if I so desire.

I further admit and agree that:

7. After having been informed of my constitutional rights, I do understand these rights, and I agree to give a statement at this time.

8. I do not want an attorney called or appointed for me at this time.

_Refused to sign — at advice of Lawe_

WITNESSES: _____

_Robert E. Safford_                    SIGNATURE

FORM 4