**STATE**

v.

**Vincent J. GIORDANO.**

**No. 79–265–C.A.**

Supreme Court of Rhode Island.

Feb. 3, 1982.

Dennis J. Roberts, II, Atty. Gen., Alan R. Tate, Asst. Atty. Gen., for plaintiff.

Mark L. Smith, Woonsocket, for defendant.

1. Mrs. King did not testify at the trial.

## OPINION

SHEA, Justice.

The defendant, Vincent J. Giordano (Giordano), appeals from his conviction for the crime of breaking and entering with the intent to commit larceny, in violation of G.L. 1956 (1969 Reenactment) § 11–8–5. Giordano claims that the trial justice committed prejudicial error in three instances, each of which would justify reversal of the conviction. He contends first that a search warrant was invalidly issued because the trial justice who signed the order was not a neutral and detached magistrate, second that the trial justice exhibited bias before the jury in favor of the prosecutor, and finally that the trial justice erred in denying Giordano's motion for a judgment of acquittal. We affirm the conviction.

The scene of the crime in question is a multistoried building located at 274 Orms Street in Providence. The owner, Donald F. King, testified that on the morning of June 29, 1976, he entered his office on the building's first floor to find that it had been broken into sometime after he had left it the previous day. The room was in complete disarray. One window had been smashed, apparently to allow the criminal ingress. King had locked all of the windows and the door before he had left the day before. King's savings passbook, checkwriter, adding machine, personal checks, and refrigerator were gone. The perpetrator had also attempted to remove a room air conditioner but had been unsuccessful. It was found sitting askew in the window.

King testified that he and his wife had the only keys to the office. He said that his wife was in the office occasionally but, had not been there the day before the break-in. King also said that neither he nor his wife ever gave their keys to anyone else.[1] Aside from the Kings no others had permission to be in the office.

King knew Giordano in 1973 when Giordano, as a short-term tenant, lived in rooms

located above King's office. King saw Giordano once near the building after 1973 but never met him in the office after the time of his tenancy.

Officer Wayne P. Gill of the Providence police department came to the scene in response to King's report of the crime. He was then a member of the Bureau of Criminal Investigation. He examined several items for fingerprints, including the air conditioner. King had purchased the air conditioner at a fire sale and installed it himself in 1975. While restoring it to working condition, King had wiped it down completely with a household cleaning liquid.

Officer Gill testified that he had found two identifiable fingerprints on the air conditioner. He was able to match these prints to Giordano's fingerprints. As part of the identification process, Officer Gill used fingerprints that he had taken from Giordano just before giving his testimony on the second day of the trial. King and Gill were the only witnesses who testified during the trial.

■ Giordano's first claim of error involves the taking of his fingerprints on the same day that Gill testified. This fingerprinting was the subject of a search warrant issued by the trial justice on the morning of the trial's second day. Giordano claims that the timing of the order tainted the search warrant. Specifically, the taint arose because the trial justice, having heard a full day's testimony the previous day, was not a neutral and detached magistrate as required by the United States Constitution. *See Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

The record shows that on the day that the trial commenced and prior to the taking of testimony, the state orally requested that it be allowed to fingerprint Giordano forthwith. The state explained its request in this way: a gap existed in its proof linking Giordano and the prints found on King's air conditioner because of the unavailability of a witness. The Providence police did have fingerprint cards with Giordano's name on them both from the 1960's and from Giordano's arrest for this offense. Officer Gill

had made a positive identification when he had compared the fingerprint cards on file with the prints he took at the crime scene. However, the state lacked a witness to testify that the Vincent Giordano whose fingerprints appeared in police records was the same individual as the Vincent Giordano on trial. The state's purpose in taking Giordano's prints at the time of trial was to match them to the prints that were already on file and not merely to assemble cumulative proof against Giordano. At the time of the request the trial justice reserved his decision.

On the second morning of the trial before testimony resumed, the trial justice requested and received the affidavits of Officer Gill and his superior, Captain Phillip Barthgate, which affidavits reiterated in detail the state's request. The trial justice then issued the warrant that Giordano now challenges. We think the procedure did not run counter to constitutional requirements.

Giordano challenges the neutrality and detachment of the trial justice. He points out that the trial justice had already heard testimony that referred in part to a search for fingerprints. By virtue of this fact he attempts to identify the trial justice with the prosecutor. Giordano refers us both to cases in which officials having police or prosecutorial functions also engaged in issuing search warrants, and to cases that reiterate the need to divide these functions. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, *reh. denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971) (warrant invalid if issued by state attorney general acting as justice of the peace); *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) (district attorney issuing subpoena duces tecum not a valid basis for search); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (hurried action of law-enforcement officers is inferior to the informed detached judgment of magistrates); *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (the "often competitive enterprise of ferreting out crime" requires that probable cause be determined in an environment of neutrality).

None of those cases is helpful to Giordano. Conspicuously absent from the present case is that element of institutional bias to which the courts have addressed themselves in the cited cases. Here, we have the role and function of a strictly judicial officer. The record indicates that the trial justice was fully aware of his responsibility to remain impartial. Nothing in the trial justice's remarks would cause this court to believe that he considered any material other than the affidavits presented to him. Moreover, there was nothing in the previous day's testimony concerning fingerprints that the trial justice was not made aware of by the state in its oral motion. We find nothing in the record that would detract from the trial justice's neutrality regarding the issuance of the warrant.

Giordano next contends that he was denied his right to a fair and impartial trial under the State and Federal Constitutions because the trial justice took it upon himself to interrogate the witnesses King and Gill at various times. Giordano argues that the trial justice's participation was unwarranted and prejudicial to his case because the trial justice's activity endorsed or promoted the prosecution's side of the case.

The record discloses five instances in which the trial justice interjected his own questions to the witnesses. Giordano timely objected in each case. The trial justice asked King whether he had ever permitted Giordano to be on the premises after King had installed the air conditioner and how often King's wife came to the office. He questioned Officer Gill about the method and terminology of fingerprint identification. He asked Gill to express his opinion concerning the similarity or the lack of similarity he found between the recorded fingerprints and those Gill found at the crime scene. He also asked Gill whether he used photographic enlargements of the prints in making his comparisons. Finally, the trial justice asked Gill to explain an answer to a question asked on cross-examination.

This court long ago addressed the problem of examination by the trial justice in front of the jury in *State v. Amaral*, 47 R.I. 245, 132 A. 547 (1926), cited by neither party. Therein this court stated:

"In the furtherance of justice it is sometimes proper and commendable for a judge presiding in a jury trial to interrogate a witness as to relevant matters proper to be presented to the jury. He should do this, however, with caution. In such examination he should guard against even the appearance of changing his position from that of a judicial officer impartially presiding at the trial to that of a partisan advocate interested in establishing the position of either party. He should not be led to express by language, or the tones of his voice, or in any other manner his opinion as to the credibility of the witness or the weight which should be given to his testimony. His examination is to be governed by the same rules as those which govern counsel and his questions are equally open to exception." *Id.* at 249–50, 132 A. at 549–50.

We believe that *Amaral* is still a good standard of propriety in the matter of judicial interrogation. We take this opportunity, however, to reiterate our concern for judicial impartiality.

We have consistently recognized that the conduct of a trial is within the sound discretion of the trial justice. *Padula v. Machado*, R.I., 416 A.2d 1184 (1980); *Pucci v. Algiere*, 106 R.I. 411, 261 A.2d 1 (1970). Furthermore, the trial justice is responsible for ensuring that as the parties present their respective cases, the truth is properly ascertained. *State v. Santos*, R.I., 413 A.2d 58 (1980).

However, we cannot overemphasize the need for caution when the trial justice deems it necessary to question a witness. He should do this only reluctantly. The trial justice should be certain that his questions will elicit the truth and will clarify a matter which he justifiably feels is a cause for confusion in the minds of the jurors. He should first allow counsel every opportunity to refine the witness's testimony. Foremost in our minds is the prevention of judicial bias.

■ Our careful review of the present record satisfies us that none of the trial justice's questions advocated the state's position or conveyed his own opinion about the credibility or the weight of the testimony, even though some of the matters raised would have been better left to examination by counsel at the appropriate time. The record is clear that the trial justice's inquiries were limited to clarifications of the evidence and did not constitute improper interference in the presentation of evidence.

Furthermore, in this case the trial justice instructed the jurors to use their own recollections of the evidence to arrive at a conclusion. He warned them not to be influenced by anything else.

"Now, Ladies and Gentlemen, I have no right to tell you what verdict to return in this case. From anything that has transpired in this courtroom during the trial, from what I am now saying, do not conclude that I am in any way attempting overtly or covertly to tell you what your verdict should be or what you should return. If you think that you detect a · secret instruction from me on this point, in my words or in my conduct, you will be deceiving yourselves. Nor am I trying to tell you whether you should believe or disbelieve any evidence or any witness. You and you alone are charged with the duty to determine where the truth lies and to discard untruthful testimony. And you know that I would not in any way attempt to influence your decision in these matters. All these decisions must be made by you and not by me."

We do not say that a cautionary instruction will always be a successful curative measure. However, we are satisfied today that the quoted instruction reinforces our conclusion that the tenor of the trial justice's questioning contained no prejudicial influences.[2]

■ Giordano's final claim of appeal is that the trial justice erroneously denied his motion for judgment of acquittal. In considering such a motion, the trial justice is obliged to view the evidence in the light most favorable to the state and must draw from such evidence all reasonable inferences that are consistent with the guilt of the accused. He does not assess the credibility or weight of the evidence. *State v. Roddy,* R.I., 401 A.2d 23 (1979); *State v. Johnson,* 116 R.I. 449, 358 A.2d 370 (1976). Giordano claims that error lies in the trial justice's failure to eliminate every reasonable hypothesis of innocence. *State v. Montella,* 88 R.I. 469, 149 A.2d 919 (1959). He argues that when a case is based solely on circumstantial evidence, guilt may be found only if there is no fact or circumstance that supports a reasonable hypothesis of innocence. He argues that the state failed to establish his guilt because it could not determine exactly when Giordano put his fingerprints on the room air conditioner in King's office.

■ The state sufficiently met its burden of proof and therefore presented sufficient evidence consistent with Giordano's guilt. In *State v. Roddy, supra,* we abandoned the *Montella* rule. In considering circumstantial evidence, the state need only show guilt beyond a reasonable doubt. *State v. Roddy, supra.* The evidence shows that King, the owner of the premises, locked his office upon leaving the day before the break in occurred. When he arrived the next morning, he found that the office had been broken into; neither he nor his wife had given permission to anyone else to enter the premises. Later, Officer Gill dusted several items in the office, including the air conditioner, and removed two identifiable fingerprints. He compared these prints to existing police files labeled

**2.** In the same portion of his brief Giordano argues that the trial justice erroneously disallowed a question asked of Officer Gill on cross-examination, when counsel said he had no intention of presenting his own expert to refute Gill's testimony. However, counsel simply withdrew the question without objection. The matter must therefore be deemed waived on appeal. Further, Giordano complains that the trial justice became prosecutorial when he cut off the state's argument and proceeded to address Giordano's motion for judgment of acquittal. We fail to see the prejudice that Giordano claims to have resulted to him and he did not detail his reasons for claiming error. This matter must therefore also be deemed waived.

"Vincent Giordano." From these prints and from prints he took as a result of the search warrant, he was able to identify the defendant as the owner of both the known prints and the prints taken from the air conditioner. Although the defendant had once been a tenant in the building, King had acquired the air conditioner after that time. The defendant had not been in his office after his 1973 tenancy ended. When King had installed the air conditioner he had thoroughly cleaned it before putting it into operation. These factors present a sufficient basis upon which the jury could well decide the defendant's guilt. Therefore, the trial justice did not err when he denied Giordano's motion for judgment of acquittal.

For all of the foregoing reasons, the defendant's appeal is denied and dismissed. The conviction is affirmed, and the papers are remanded to the Superior Court.